OPINION
{¶ 1} Defendant-Appellant, Carl Johns, appeals the judgments of the Municipal Court of Tiffin, sentencing him upon his convictions for possession of marijuana, possession of drug paraphernalia and carrying a concealed weapon. On appeal, Johns contends that the record contains insufficient evidence to support his convictions, that the State committed prosecutorial misconduct in closing arguments and that the mandatory weapons disability imposed upon Johns for his drug possession conviction violates his constitutional right to bear arms. Finding that the record does contain sufficient evidence to support each of Johns' convictions, that the comments made by the State during closing arguments were harmless and that Johns' claim that his constitutional right to bear arms has been violated is not yet ripe for review, the judgments of the trial court are affirmed.
 {¶ 2} In April of 2004, Johns was pulled over by a Tiffin Police Officer. Sergeant Mark Marquis testified that he initiated the traffic stop because Johns' vehicle had only one working headlight. There were four other persons in Johns' vehicle when Marquis pulled him over. After Johns was stopped, a second vehicle pulled up behind Sergeant Mark Marquis' marked cruiser. At that point, Sergeant Michael Marquis also stopped at the scene to keep an eye on the second vehicle.
 {¶ 3} Johns was asked to step out of the car so that Sergeant Mark Marquis could keep all the passengers in view while he questioned Johns. At that point, Sergeant Michael Marquis shined his flashlight into the vehicle and noticed a K-bar knife sticking out from under the driver's seat. Consequently, Johns was patted down and handcuffed. Sergeant Mark Marquis took a small pocket knife from Johns during the pat down.
 {¶ 4} Upon further search of the vehicle, both Sergeants Mark and Michael Marquis found a second knife and a purple Crown Royal bag under the front seats, between the driver and the passenger's sides of the seat. The second knife was an eight inch dagger sold for the purposes of medieval reenactments. The dagger did not have a sharp edge, but it did have a striking ball attached to the handle. At the time that the second knife was removed from under the car seat, the officers did not know that it did not have a functional blade. The Crown Royal bag contained a baggy of marijuana, rolling papers, two pipes, portable scales and an additional small pocket knife.
 {¶ 5} Johns was then arrested for carrying a concealed weapon in violation of R.C. 2923.12(A), a misdemeanor of the first degree, possession of marijuana in violation of R.C. 2925.11(A), a minor misdemeanor, and possession of drug paraphernalia in violation of R.C.2925.14(C)(1), a misdemeanor of the fourth degree.
 {¶ 6} In July of 2004, Johns was convicted by a jury of the possession of paraphernalia and of the carrying a concealed weapon charges. Additionally, Johns was convicted by the trial court of possession of marijuana. Johns was then sentenced, in separate judgment entries, upon his convictions. It is from these judgments Johns appeals. The judgments have been consolidated for the purposes of this appeal, and we are presented with the following assignments of error for our review.
 Assignment of Error No. I Defendant's conviction was not supported by sufficient credibleevidence. The trial court erred in denying Defendant's Motion ofacquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.
 Assignment of Error No. II The trial court erred when it permitted prosecutorial misconduct duringclosing argument.
 Assignment of Error No. III The current scheme that imposes a weapon disability for personsconvicted of minor misdemeanor drug possession is not rationally relatedto a compelling government interest and improperly deprives the Appellanthis constitutional right to bear a firearm.
 Assignment of Error No. I {¶ 7} In the first assignment of error, Johns asserts that the trial court erred in denying his Crim.R. 29 motion, because the evidence in the record is insufficient to support his convictions.
 {¶ 8} Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus. The Bridgeman standard, however, "must be viewed in light of the sufficiency of evidence test[.]" Statev. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09, unreported, citingState v. Jenks (1991), 61 Ohio St.3d 259, para. two of the syllabus, superseded by state constitutional amendment on other grounds in Statev. Smith (1997), 80 Ohio St.3d 89. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jenks, 61 Ohio St.3d at para. two of the syllabus.
 {¶ 9} In the case sub judice, Johns asserts that his Crim.R. 29 motion should have been granted, because the K-bar knife was not concealed, the medieval knife had no edge and was not designed as a weapon, none of the knives were ever brandished or used in a threatening manner towards the police officers and there was no testimony offered to establish ownership of the marijuana and drug paraphernalia.
 {¶ 10} We will first address Johns' convictions for both possession of drugs and paraphernalia. R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C.2925.14(C)(1) provides that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." Drug paraphernalia is defined as "any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance in violation of this chapter." R.C.2925.14(A).
 {¶ 11} At trial, both Sergeants Michael and Mark Marquis testified. Both were present at the stop. Sergeant Mark Marquis testified that upon entering the car to remove the K-bar knife, he smelled the distinct odor of burnt marijuana. Then, upon searching under the front seat he recovered the Crown Royal bag, which contained a baggy of marijuana as well as two pipes. The State also presented the testimony of Detective Brian Bryant, who testified that the green leafy substance found in the Crown Royal bag was positively identified as marijuana. Additionally, he stated that the pipes found in the bag were used for smoking marijuana and that each contained resin, which tested positive for THC, a substance found in marijuana. Finally, Sergeant Mark Marquis stated that he asked Johns if the drugs were for his personal use or for sale. Sergeant Mark Marquis then testified that Johns told him that the drugs were for his personal use.
 {¶ 12} Accordingly, upon review of the record, we find that any rational trier of fact could have found that Johns possessed drugs and paraphernalia beyond a reasonable doubt. The drugs and the paraphernalia were found in Johns' car. While there were other people in the car, the Crown Royal bag was found in the general vicinity of Johns. Finally, Sergeant Mark Marquis testified to the statement that linked Johns to the drugs. Thus, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the both possession of drugs and paraphernalia were proved beyond a reasonable doubt.
 {¶ 13} As to the carrying a concealed weapon charge, R.C. 2923.12(A)(1) provides:
(A) No person shall knowingly carry or have, concealed on the person'sperson or concealed ready at hand, any of the following:
 (1) A deadly weapon other than a handgun; * * *
 {¶ 14} Here, Johns asserts that the evidence is insufficient to establish that the K-bar knife was concealed, that the medieval knife was designed as a weapon or that any of the knives were brandished or used in a threatening manner towards the police officers.
 {¶ 15} At trial, Sergeant Michael Marquis testified that, after Sergeant Mark Marquis asked Johns to step out of the car, he shined his flashlight into the vehicle and noticed a K-bar knife sticking out from under the driver's seat. Additionally, both Sergeants Michael and Mark Marquis testified that they both carried and used the K-bar knives as weapons.
 {¶ 16} First, Johns contends that there was no evidence that the K-bar knife was concealed because there was testimony that Sergeant Michael Marquis was able to see a part of the K-bar knife sticking out from under the front seat of Johns' car. "`[I]t is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence. This is a question of fact to be resolved by the trier of fact. There must be an evidentiary basis established by the proof upon which the jury could find that the weapon was concealed.'" State v. Brandle (1996), 116 Ohio App.3d 753,757-758, citing State v. Coker (1984), 15 Ohio App.3d 97, 98. Furthermore, the Coker Court held that a weapon need not be totally hidden from observation in order to render it concealed within the meaning of the statute. 15 Ohio App.3d at 98, citing State v. Pettit
(1969), 20 Ohio App.2d 170, para. three of syllabus. Accordingly, we find that the State produced sufficient evidence to establish the element of concealing.
 {¶ 17} Additionally, Johns asserts that the evidence is insufficient because the knives were never brandished or used in a threatening manner. However, R.C. 2923.12(A)(1) does not require that the weapon ever be brandished or used in a threatening manner. Rather, the R.C.2923.12(A)(1) requires only that a person shall not conceal a deadly weapon. A deadly weapon is "any instrument * * * capable of inflicting death, and designed or specially adapted for use as a weapon, orpossessed, carried, or used as a weapon." R.C. 2923.11(A). "In other words, a deadly weapon under the statute is more than just an instrument capable of inflicting death. It also must be either (1) designed or specially adapted for use as a weapon, or (2) possessed, carried, or used as a weapon." State v. Lear (May 14, 1999), 1st Dist. No. C-980740, unreported; see, also, State v. Singh (1996), 117 Ohio App.3d 381,386-387. Under this definition, "a knife is not presumed to be a deadly weapon, even if it is concealed." Columbus v. Dawson (1986),28 Ohio App.3d 45, 46.
 {¶ 18} In the case sub judice, it is clear that the K-bar knife was capable of inflicting death. See, State v. Sears (Feb. 27, 1980), 1st Dist. No. C-790156, unreported. Additionally, the State offered sufficient evidence to prove that the K-bar knife was designed for use as a weapon. Again, both Sergeants Michael and Mark Marquis testified that they each carried that same brand of knife as a weapon. Viewing the evidence in the light most favorable to the State, we find that there is sufficient evidence to prove each of the elements of concealment as to the K-bar knife. Because Johns was only charged with one count of carrying a concealed weapon, we find it unnecessary to address Johns' argument regarding the medieval dagger.
 {¶ 19} Finally, Johns challenges the sufficiency of the evidence to sustain his conviction for the carrying a concealed weapon charge by claiming that he established the affirmative defense of carrying the knife for a lawful purpose. When reviewing a claim by a defendant that evidence supports an affirmative defense, the manifest weight standard is the proper standard of review. We review a claimed affirmative defense under the manifest weight standard, because the defense of carrying a knife does not seek to negate an element of the offense charged, but rather seeks to relieve a defendant from culpability. State v. Martin
(1986), 21 Ohio St.3d 91, 94. Therefore, we will now address whether Johns' conviction of carrying a concealed weapon is against the manifest weight of the evidence presented.
 {¶ 20} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 21} To support the affirmative defense of carrying the knives for a lawful purpose, Johns presented the testimony of his father, Mitch Johns. Mr. Johns testified that he had bought his son both the K-bar knife and the medieval reenactment knives. Additionally, he stated that his son used the K-bar knife for deer hunting. The State also questioned Sergeants Michael and Mark Marquis as to whether the K-bar knife could be used for deer hunting. Both testified that while it was possible to use the knife for deer hunting, it was not the best choice of knife to use because it could puncture the organs of deer and ruin the meat.
 {¶ 22} The issue of Johns' affirmative defense essentially comes down to an issue of credibility. The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, para. one of the syllabus. Accordingly, upon review of the record, we cannot find that the jury clearly lost its way or created such a manifest injustice that reversal is required.
 {¶ 23} In sum, having found that the State presented sufficient evidence to support each of defendant's convictions and that evidence as to the carrying a concealed weapon conviction is not against the manifest weight of the evidence, the first assignment of error is overruled.
 Assignment of Error No. II {¶ 24} In the second assignment of error, Johns asserts that the trial court permitted prosecutorial misconduct during closing arguments. Specifically, Johns argues that comments made about the Washington D.C. Police Officer's Memorial and Abraham Lincoln were inflammatory, requiring reversal. We disagree.
 {¶ 25} At the outset it must be remembered that considerable latitude is permitted during closing argument. State v. Mauer (1984),15 Ohio St.3d 239, 269. The standard for prosecutorial misconduct during closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. Statev. Lott (1990), 51 Ohio St.3d 160, 165. As we stated in State v. Coffman
(1998), 130 Ohio App.3d 467, "this inquiry is guided by four factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of evidence against the defendant." Id. at 471, citingSidney v. Walter (1997), 118 Ohio App.3d 825, 829. Further, we must also be "mindful of the general maxim that prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial." Coffman at 471, citing State v.Phillips (1995), 74 Ohio St.3d 72, 90.
 {¶ 26} In the case sub judice, Johns contends that the following statements constitute prosecutorial misconduct:
State: I hope nobody's coming here say, oh, it's only a concealedweapon case. It's only pot and paraphernalia. The officers take this soseriously and the reason why is officers safety. They have every right todo that. There's a memorial in Washington D.C. * * *
 That has the names of sixteen thousand five hundred officers on it,officers killed in the line of duty. A hundred and forty-five names wereadded last year. This is why the officers are so concerned with safety. ** *
 During the Civil War at the height of it. (sic.) Abraham Lincoln wasdepressed. He was depressed because the war was not going well. He wasdepressed because his son had just died. So, what he did was he used togo the local Presbyterian church and he'd take an aide with him an he'dsit down and sneak in the back because he didn't wanna cause a commotionbecause the president was there. (para.) He would sit in the back by thePastor's study and listen to his sermon and he would leave before the endof it so, again, he didn't cause a commotion. (para.) Upon leaving onetime an aide asked, "well, how did you like the sermon?" Abe said,"well, he was eloquent and it was well thought out." So, the aid said,"so, you liked it?" Abe said, "no. Why not? Because he didn't ask us todo something great." (para.) I'm asking you to do something great today.
(Trial Tr. p. 209, 223.)
 {¶ 27} As to the State's argument about the Officer's Memorial in Washington D.C., we find that this comment was improper and was made for no other purpose than to inflame the jury. Nevertheless, Johns trial counsel objected to the comment as well as argued in his closing arguments that the comment was made to inflame the jury. Additionally, the trial court gave a corrective instruction, stating the closing arguments were not evidence. And, finally, the evidence presented against Johns was substantial on all charges. Accordingly, without more, we find the comment to be harmless.
 {¶ 28} As to the Abraham Lincoln story, while an odd story to include in closing arguments, when read in the context of the entire closing argument there is nothing inflammatory or prejudicial about those comments.
 {¶ 29} Accordingly, the second assignment of error is overruled.
 Assignment of Error No. III {¶ 30} In the third assignment of error, Johns asserts the weapons disability placed upon a person convicted of a minor misdemeanor drug possession is not rationally related to a compelling government interest and improperly deprives him of his constitutional right to bear arms.
 {¶ 31} Upon review of the record, it is apparent that Johns lacks standing to challenge the constitutionality of the statutory provisions at this time and that the constitutional issues raised herein are not now ripe for review. It is well established that "[t]he constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." Palazzi v. Estate of Gardner
(1987), 32 Ohio St.3d 169, syllabus.
 {¶ 32} The Eleventh District Court of Appeals addressed this issue inState v. Spikes (1998), 129 Ohio App.3d 142, stating that:
When attempting to demonstrate injury, it is not enough to show ahypothetical or potential injury. `Concrete injury in fact' must beestablished to have standing to mount a constitutional challenge.
 Moreover, it is also well established that constitutional questions arenot ripe for review until the necessity for a decision arises on therecord before the court.
Id. at 145.
 {¶ 33} Here, Johns argues that the weapons disability, imposed under R.C. 2923.13, for being convicted of a minor misdemeanor drug possession denies him right to bear arms under the Ohio Constitution. However, because Johns has not yet been charged with a violation under R.C. 2923.13, he is unable to show a "concrete injury in fact." Rather, all that Johns is able to show at this point is a hypothetical or potential injury. Additionally, upon review of the record before us, which involves Johns' convictions for possession of drugs, possession of paraphernalia and carrying a concealed weapon, it is unnecessary to determine the issue of the constitutionality of R.C. 2923.13. Accordingly, this issue is not ripe for our consideration.
 {¶ 34} Having found that issue of whether Johns' constitutional right to bear arms is not ripe for consideration, the third assignment of error is overruled.
 {¶ 35} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Cupp, P.J., and Shaw, J., concur.