[Cite as *State v. Manley*, 2011-Ohio-5082.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO. 1-11-04

      v.

RICKY D. MANLEY, JR.,             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2010 0216

Judgment Reversed and Cause Remanded

Date of Decision: October 3, 2011

APPEARANCES:

    *Thomas Sobecki* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Ricky D. Manley ("Manley") brings this appeal from the entry of judgment of conviction by the Court of Common Pleas of Allen County based upon a jury verdict finding Manley guilty of various felonies and sentencing Manley on those convictions. For the reason set forth below, the judgment is reversed.

{¶2} On June 30, 2010, Manley was observed by W.K. exiting a vehicle with a shotgun. Tr. 143-44. W.K. saw Manley fire the weapon in a southwesterly direction across the intersection of Allentown Road and Cornell Dr. Tr. 144-46. W.K. then saw Manley run back to the vehicle which then left the scene. Tr. 146-47. W.K. then contacted the police and gave them the license plate number from the vehicle and identified Manley as the person who fired the shotgun. Tr. 149-59.

{¶3} The Lima Police Department investigated the incident and determined that the intended victim was Barry Ward Jr. ("Ward"), who at the time of the shooting was in a vehicle at the intersection in question. Tr. 180-83. Earlier that day, Ward had assaulted Manley at the Lima Municipal Court. Tr. 176-77. The blast from the shotgun missed the vehicle, but did strike and damage a nearby home, which was occupied at the time. Tr. 230-52.

{¶4} On August 12, 2010, the Allen County Grand Jury indicted Manley on five counts: 1) felonious assault, a felony of the second degree in violation of

R.C. 2903.11(A)(2) with a firearm specification; 2) felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(2) with a firearm specification; 3) improper handling of a firearm in a motor vehicle, a felony of the fourth degree in violation of R.C. 2923.16(B)(1 & 2); 4) improperly discharging a firearm at or into a habitation, a felony of the second degree in violation of R.C. 2923.161(A)(1); and 5) discharge of a firearm on or near prohibited premises, a felony of the third degree in violation of R.C. 2923.162(A)(3) & (C)(2). A jury trial was held on December 13 and 14, 2010. The jury returned a verdict on December 14, 2010, finding Manley guilty as charged on all counts. A sentencing hearing was immediately held and the trial court sentenced Manley to a total of eighteen years in prison. Manley appeals from this judgment and raises the following assignments of error.

**First Assignment of Error**

**The Court of Common Pleas erred when it denied [Manley's] motion to suppress identification testimony.**

**Second Assignment of Error**

**The Court of Common Pleas plainly erred by failing to find that the prosecutor improperly vouched for one of its key witnesses and improperly impugned the motivation of defense counsel in his closing argument.**

**Third Assignment of Error**

**The Court of Common Pleas erred in finding that [Manley's] relationship with the victim facilitated the offense.**

{¶5} In the first assignment of error, Manley claims that the trial court erred by not suppressing the identification testimony. When considering a motion to suppress, the standard of review is a mixed review of the facts and a question of law. *State v. Hoppert*, 181 Ohio App.3d 787, 2009-Ohio-1785, 910 N.E.2d 1106.

> **Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See *State v. Winand* (1996), 116 Ohio App.3d 286, 688 N.E.2d 9, citing *City of Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 645 N.E.2d 802. * * * This is the appropriate standard because 'in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' *State v. Hopfer* (1996), 112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.**

*State v. Lloyd* (1998), 126 Ohio App.3d 95, 100-101, 709 N.E.2d 913.

> **Prior to suppressing identification testimony, a trial court must engage in a two-step analysis. First, there must be a determination that the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. Second, it must be determined that the identification itself was unreliable under the totality of the circumstances. Id. * * ***

> **In *Biggers*, the court listed the five factors that must be considered when evaluating the reliability under the totality-of-the-circumstances test: (1) the witness's opportunity to view the offender at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's prior description of the offender, (4) the witness's level of uncertainty when identifying the suspect at the confrontation, and (5) the length of time that elapsed between the crime and the confrontation. Id. at 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401.**

*State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶38-39, 940 N.E.2d 634.

A pretrial identification is only suppressed if it is both unnecessarily suggestive and unreliable given the totality of the circumstances. Id. Even if the original identification procedure was suggestive, the actual identification is still admissible as long as it is reliable. *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 and *State v. Moody* (1978), 55 Ohio St.2d 64, 9 O.O.3d 71, 377 N.E.2d 1008. The burden of proving that the identification procedure was suggestive and unreliable rests on the defendant. *State v. Taylor*, 3d Dist. No. 1-03-20, 2003-Ohio-7115.

{¶6} In this case, W.K. originally described the shooter as a black male approximately six feet tall, thin, wearing a long sleeve hooded, blue sweatshirt and pants. Suppression Hearing Tr. 14, 34. The shooter's hair was done in cornrows. Id. at 35. W.K. also testified that he was approximately 25 feet away from the shooter. Id. at 49. Three hours after the shooting, W.K. was shown a photo array, and picked out a person he thought was the shooter, but was unable to

unequivocally identify the person as the shooter. Id. On July 14, 2010, W.K. appeared pursuant to a subpoena at a preliminary hearing. While waiting in the hall to be called into the hearing, Manley was walked past W.K. wearing jail attire and handcuffs and into the courtroom. W.K. observed Manley walk up the steps and told Detective Kent Miller ("Miller") that Manley was the man who fired the gun. Id. at 41. W.K. testified that he saw Manley for approximately five seconds at around 1:30 p.m. on June 30, 2010. Id. at 43. At the time of the preliminary hearing, Miller did not know that Manley was being brought into the courtroom or that he was even near because his back was to the stairwell. Id. at 47. The State asked W.K. at the suppression hearing how certain he was of his identification on a scale of 1 to 10 with 10 being the most certain. Id. at 49. W.K. responded that on that scale, his certainty was a 10. Id. W.K. then proceeded to identify Manley in open court as the man who fired the gun. Id. at 50.

{¶7} At the conclusion of the hearing, the trial court made the following findings and conclusions of law.

> **First of all, at the preliminary hearing [W.K.] was down there. He know – knew that there was going to be a preliminary hearing. There's no evidence that there was any suggestion as to when the suspect, defendant, was coming up. When he saw the defendant he said that's the guy or words to that affect or – and then said I'm sure that's the guy who did the shooting. Officer Miller wasn't even talking to him when they're bringing him up the steps.**

**The court would further note that then you have to go back at the time of the *Neil v. Biggers* to determine the conditions at the time of the crime, the length of the observation. He saw the defendant – the person get out of the vehicle, had a gun, he left. He came – he heard the gun be – rifle or gun be fired. He came back. He had a hood. The hood was off. He looked right at him. He was 20 – around 25 feet away. He had a good view of him, lighting conditions at the time of – it was the middle of the day. It was nice outside. He was – what I think is important too the – [W.K.] was not an alleged victim. That he was a witness who was able to observe what was going on.**

**The court finds that the reliability in this particular instance, after concerning – after considering the totality of the circumstances that it is reliable and as a result the motion to suppress is overruled and denied.**

Id. at 60-61.

{¶8} In this case, the five factors to be considered when determining the reliability of the identification include first, the witness' opportunity to view the offender at the time of the crime. *Biggers*, supra. The evidence from the hearing indicated that the crime took place in the early afternoon, on a sunny, clear day. Manley stood no more than 25 feet from W.K. and looked directly at W.K. for roughly five seconds. W.K. also testified that he was wearing his glasses at the time. Thus, the trial court's findings concerning the ability of W.K. to observe the offender are supported by competent, credible evidence.

{¶9} Next, the court considers the witness's attention to details at the time of the crime. Id. W.K. was able to identify the vehicle in which Manley arrived

as a blue sedan and to obtain the license plate number on the vehicle. He also heard the gun shot and looked directly at the shooter as he returned to the vehicle. He was able to provide the license plate to the dispatcher and to give a fairly detailed description of the offender to Miller three hours after the incident. These facts indicate that W.K.'s attention to detail was good.

{¶10} The third factor is the accuracy of the witness's prior description of the offender. Id. Miller testified that W.K. identified the shooter as a six foot tall, slim black male with long, braided hair. Tr. at 14. The shooter was identified as wearing a dark hooded sweatshirt and long pants. Id. This description matches that stated in the original police report filed the date of the incident and made part of the record per Manley's discovery request. August 26, 2010 Discovery Response. Pursuant to Manley's driver's license information, Manley is 6'01" and 170 pounds. Exhibit A. He also has long braided hair and is a black male. Thus, the original description given by W.K. was fairly accurate.

{¶11} The fourth factor is the level of certainty the witness expresses when making the identification. W.K. testified that he was pretty sure that the offender was in the original photo array, but was not positive, so did not make a definite identification at that time. Tr. at 49. However, when he observed Manley at the courthouse, he was positive that he was the shooter. W.K. then volunteered to Miller, who did not know that Manley had appeared, that the police had arrested

the person who did the shooting. This identification was not solicited by the State, but was volunteered by the witness. During the suppression hearing, W.K. again identified Manley as the shooter and expressed that he was 100% confident in his identification of Manley.

{¶12} Finally, the fifth factor requires that the court consider the length of time between the crime and the identification. The crime occurred on June 30, 2010. W.K. first made a positive identification of Manley on July 14, 2010, a mere two weeks after the event. This identification was subsequently repeated on December 10, 2010, at the hearing on the motion to suppress. At no time did W.K. waiver in his identification of Manley. Given all of these factors, the evidence supports the trial court's determination that the identification was reliable. An identification is admissible if it is reliable regardless of the suggestiveness of the original identification. *Manson*, supra and *Moody*, supra. Here, the trial court determined that W.K.'s identification was reliable and that finding is supported by the evidence. Since the identification was reliable, it was admissible. Therefore, the trial court did not err in denying the motion to suppress. The first assignment of error is overruled.

{¶13} In the second assignment of error, Manley claims that the trial court erred by allowing the State to improperly vouch for the credibility of its witness and by improperly impugning the character of defense counsel. Manley claims

that the improper statements made by the State amount to prosecutorial misconduct and is sufficient to warrant reversal. However, this court notes that Manley did not object to either of the statements to which he assigns error. A claimed error not objected to will not be reviewed on appeal absent a showing of plain error. Crim.R. 52(B), *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332. To rise to the level of plain error, the record must show that the error occurred and that the error affected the outcome of the trial. Id.

{¶14} The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31. "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton* (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d 970. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Davis*, supra at ¶231 (quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78). Prosecutorial misconduct is generally not grounds for reversal unless it so taints the proceedings as to deprive the

defendant of a fair trial. *State v. Johns*, 3d Dist. No. 13-04-23, 13-04-24, 13-04-25, 2005-Ohio-1694, ¶25.

{¶15} Manley argues that two specific statements made by the prosecutor during closing argument were instances of prosecutorial misconduct. The first is as follows.

> **In particularly – well, what's particularly offensive is the idea that Detective Stechschulte, who can't stand at this microphone and speak to you directly and defend that sort of accusation, nor can anyone else from the Lima Police Department, that anyone from that department would for a minute say to themselves, by God, we're going to get a Manley off the street and then shape their investigation in that direction.**
>
> **I know these people, and frankly, it's offensive.**

Tr. 456. Manley argues that the prosecutor was vouching for the credibility of the witnesses with this statement. "An attorney may not express a personal belief or opinion as to the credibility of a witness." *Davis*, supra at ¶232. Contrary to the argument set forth by the State, this statement was improper. The prosecutor put forth his opinion that these witnesses would not do what Manley claimed. That is vouching for the witnesses and is impermissible. *Davis*, supra. Thus, an error occurred.

{¶16} The second statement to which Manley assigns error is as follows.

> **Now, evaluating this case, it's not unlike picking up a pair of binoculars and looking out into the distance. When you first pick up those binoculars and you look out in the distance, okay,**

-11-

> **it might be blurry. You sharpen that image. You focus, and it becomes clear. And defense attorneys, if they're doing their job, frankly, if they're doing their job, and it's their job, is to make that, if they can within the bounds of the rules and bounds of propriety, make that image a little more fuzzy. That's the tension between a prosecutor and a defense attorney. We try to make it clear. They try to make it more fuzzy.**

Tr. 462. This statement is completely improper. The implication is that the State is telling the truth and the defense counsel is not. Prosecutors must not make insinuations and assertions designed to mislead the jury. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. Although prosecutors are given wide latitude during closing arguments, that latitude does not permit the prosecutor to denigrate the role of defense counsel. *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203.

{¶17} In a case similar to the one before this court, the First District Court of Appeals of Ohio held as follows.

> **A prosecutor may argue and argue ardently that the evidence does not support the conclusion postulated by defense counsel. A prosecutor may not, however, denigrate the role of defense counsel by injecting his personal frustration with defense tactics, especially when, as here, the prosecutor continues in this fashion:**
>
> **"And when you think about that you gain valuable insight into their whole method of operation. Crank up the fog machine. Let's try and conjure up a reasonable doubt."**
>
> **The prosecutor was not entitled to employ rebuttal argument to denigrate the role of defense counsel and to insinuate to the jury**

> **that [the defendant] and his counsel, by exercising their right to suggest what conclusions may or may not have been drawn from the evidence found at trial, were seeking to hide the truth. * * * The prosecutor's remarks in rebuttal also constituted improper conduct.**

*State v. Hart* (1994), 94 Ohio App.3d 665, 673-74, 641 N.E.2d 755. Like the prosecutor in *Hart*, the prosecutor in this case insinuated that defense counsel was attempting to hide the truth by making it "more fuzzy." The attempt to denigrate the role of defense counsel is misconduct by the prosecutor.

{¶18} Having found that prosecutorial misconduct occurred in the closing argument, the next step is to determine whether the statements were so prejudicial as to rise to the level of plain error. Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements only occurs if the attitude of the statements permeates the entire atmosphere of the trial. *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 664 N.E.2d 1318. This inquiry is guided by the four factors discussed above. *Johns*, supra at ¶25. The nature of the remarks has already been discussed. Also discussed was the fact that Manley did not object to the remarks during trial. The third factor is whether a curative instruction was given. Although the trial court did not tell the jury to disregard the specific statements, the jury was instructed that the statements made during closing arguments were not to be considered as evidence. Tr. 472. The trial court also instructed the jury that it was the sole judge of the credibility of the witnesses.

Tr. 473. Thus, curative instructions were given. Finally, this court must consider the strength of the evidence. The jury heard all the evidence and evidently believed the testimony of W.K. This court does not find that the evidence was so weak that there would have been no conviction absent the prosecutorial misconduct. Therefore, the statements do not rise to the level of plain error and the second assignment of error is overruled.

{¶19} Although the prosecutorial misconduct did not rise to the level of plain error, this court must emphasize that prosecutors must be diligent in their efforts to remain within the boundaries of acceptable argument. Prosecutors must adhere to the highest standards due to their unique role in the justice system. A prosecutor "may prosecute with earnestness and vigor * * *. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314.

{¶20} Manley claims in the third assignment of error that the trial court erred in finding that his relationship with the victim facilitated the crime.

> **(A) Unless otherwise required by [R.C. 2929.13 or 2929.14], a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in [R.C. 2929.11]. In exercising that**

> **discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in division (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.**
>
> **(B)   The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:**
>
> **\* \* \***
>
> **(6)The offender's relationship with the victim facilitated the offense.**

R.C. 2929.12.   To facilitate means to make easier.   The American Heritage Dictionary (2 Ed. 1985) 484.   In order to have the relationship facilitate the offense, the defendant must have used his relationship with the victim to help commit the offense.  *State v. McDade*, 6th Dist. No. 06-OT-001, 06-01-004, 2007-Ohio-749.  In other words, the defendant must have used the relationship to allow him to commit the offense in a manner which he could not have accomplished without the relationship.

{¶21} The trial court in this case found that Manley's relationship with Ward facilitated the offense.   However, the evidence indicates that any relationship between Ward and Manley was not friendly, but was rather combative.   Although the relationship between Ward and Manley may have

provided the motive for the crime, it did not make it easier for Manley to commit the crime.[1]  The testimony at trial by Ward was that there was no real relationship between the two. Tr. 196.  A review of Ward's testimony indicated that Ward was rather dismissive of Manley and did not consider him as either a friend or an enemy, but rather just someone who was there.  Ward admitted that he struck Manley at the courthouse. Tr. 191.  Before that day, there was no physical contact between the two. Tr. 195.  In Ward's opinion, Manley was a thief, but not a fighter based upon a prior incident in which he believed Manley may have stolen something from his car. Tr. 195-96.  There was no evidence presented that Manley was able to use his relationship with Ward to commit the offense.  Thus, the trial court erred in finding that the relationship facilitated the offense.

{¶22} Although the relationship did not facilitate the offense, this error is not necessarily prejudicial.  The trial court in this case considered more than just one factor of those set forth in R.C. 2929.12(B), it considered all of statutory factors.  The trial court need not specifically address each and every factor that it considers, but may instead just indicate that it has considered the statutory factors. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1 and *State v. Alvarado*, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶47.  The Ohio Supreme Court

---

[1] Rather than facilitate the offense, the combative nature of the earlier interaction was more likely to put the victim on guard against the defendant.  It did not make the actual commission of the offense any easier for the defendant.

in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus, held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." The trial court specifically stated that it had considered the factors set forth in R.C. 2929.12. Dec. 17, 2010, Entry, 6. The sentences imposed upon Manley for the various offenses were all within the statutory ranges. Thus, Manley did not suffer prejudicial error due to the finding and any error was harmless. For this reason, the third assignment of error is overruled.

**{¶23}** Although this court has not found error with any of the stated assignments of error, this court sua sponte chooses to address a plain error in the sentencing in this matter. A review of the verdict forms shows that the levels of offense and/or aggravating factors were not specified.

> **R.C. 2945.75(A) plainly requires that in order to find a defendant guilty of "an offense * * * of more serious degree," the guilty verdict must either state "the degree of the offense of which the offender is found guilty" or state that "additional element or elements are present." R.C. 2945.75(A)(2) also provides, in the very next sentence, what must occur if this requirements is not met: "Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." When the General Assembly has written a clear and complete statute, this court will not use additional tools to produce an alternative meaning.**

*State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, ¶12, 860 N.E.2d 735. For

Count Three, the verdict form reads as follows:

> **We the jury, being duly impaneled and sworn, find the Defendant, Ricky D. Manley, Jr. [Guilty] if Improper Handling of a Firearm in a Motor Vehicle as charged in the Indictment.**

Verdict Form Count Three. The indictment specifies that Manley was charged

with a felony of the fourth degree. However, the minimum offense in the statute is

a fourth degree misdemeanor. R.C. 2923.16. The verdict form did not set forth

the degree of culpability or specify any aggravating factors. Thus, pursuant to

R.C. 2945.75(A)(2) and the holding of the Ohio Supreme Court in *Pelfrey*,

Manley should have been found guilty of a fourth degree misdemeanor, not a

fourth degree felony.

{¶24} In count five of the indictment, Manley was charged with a third

degree felony for improperly discharging a firearm near prohibited premises. The

lowest degree of culpability listed in the statute is a fourth degree misdemeanor.

The verdict form reads as follows:

> **We the jury, being duly impaneled and sworn, find the Defendant, Ricky D. Manley, Jr. [Guilty] of Discharging of Firearm On Or Near Prohibited Premises as charged in the Indictment.**

Verdict Form Count Five. Once again, no degree of culpability was specified and

no aggravating elements were listed. Therefore, the trial court erred in finding

Manley guilty of the third degree felony. The trial court should have found him guilty of a fourth degree misdemeanor. As a result of these sentencing errors, the judgment of conviction and subsequent sentences is reversed.

{¶25} Having found error prejudicial to the defendant, the judgment of the Court of Common Pleas of Allen County is reversed and the matter is remanded to the trial court for a proper judgment of conviction and for resentencing.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, P.J. concurs.**

**/jlr**

**SHAW, J. concurs in Judgment Only.**

{¶26} The record in this case establishes a properly framed indictment, properly framed issues at trial, and properly framed jury instructions, all of which resulted in a full and complete apprisal by the defense, prosecution, judge and the jury of the charges, what was to be defended, and the exact convictions returned.

{¶27} As a result, there is no possibility of prejudice to the defendant, or any conceivable misunderstanding for that matter, resulting from the verdict form in this case. In this regard, this case is identical to the circumstances addressed in the prior decision of this court in *State v. Ligon*, 179 Ohio App.3d 544, 2008-Ohio-6085. For all of the same reasons set forth in my separate concurrence in

*Ligon*, as compelled only by the decision of the Ohio Supreme Court in *Pelfrey, supra*, I concur in judgment only in this case.

/jlr