[Cite as *State v. Tate*, 2016-Ohio-8421.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


STATE OF OHIO,                    :        **O P I N I O N**

        Plaintiff-Appellee,         :

    - vs -                                :        **CASE NO. 2015-L-038**

WALTER D. TATE,                   :

        Defendant-Appellant.       :


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000575.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Timothy Young*, Ohio Public Defender, and *Nikki Trautman Baszynski*, Assistant Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH 43215-9308 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Walter D. Tate, appeals the amended judgment sentencing him following his guilty plea to voluntary manslaughter with firearm and repeat violent offender specifications. He challenges the trial court's seriousness findings supporting his maximum prison term for voluntary manslaughter. For the following reasons, we affirm.

**{¶2}** Tate was hosting a party at his residence on the Fourth of July in 2014. His cousin, James Brown, arrived with a white female. Tate commented that Brown's friend was Caucasian and an altercation ensued. Tate asked Brown to leave, but he did not. Instead, Brown's provocative comments toward Tate escalated. Brown ultimately said something to the effect of I'm going to do to you and your son what happened to you as a child. Tate was apparently the victim of an attempted rape as a child. Brown's comment invoked a sudden rage in Tate, who immediately entered his home, obtained his gun, and shot Brown once. Brown died as a result.

**{¶3}** Tate fled to Detroit, but was eventually extradited to Ohio. He was indicted on five counts: aggravated murder, two counts of murder, and two counts of having a weapon while under a disability. Each count had an attendant firearm and repeat violent offender specification.

**{¶4}** Tate pleaded guilty to a lesser offense on count one, i.e., voluntary manslaughter, a first-degree felony in violation of R.C. 2903.03(A), and the attendant three-year firearm specification under R.C. 2941.145 and repeat violent offender specification under R.C. 2941.149. The remaining counts were dismissed.

**{¶5}** The trial court imposed a total mandatory prison term of 18 years. It sentenced Tate to 11 years for voluntary manslaughter, three years for the firearm specification to be served prior to and consecutive to the 11 years. The trial court found that an additional prison term was warranted for the repeat violent offender specification and imposed a four-year mandatory prison term on this specification. The court likewise imposed five years mandatory post-release control and ordered Tate to pay court costs and the costs of prosecution.

**{¶6}** He asserts two assigned errors:

2

**{¶7}** "The court erred when it incorrectly found that Mr. Tate's relationship with the victim facilitated the crime. R.C. 2929.12(B)(6); Jan. 26, 2015 Hr'g T.p. 34-38; Sentencing Hr'g T.p. 23-24.

**{¶8}** "The court erred when it incorrectly considered the imminence of the threat in determining the punishment for a voluntary manslaughter charge. R.C. 2903.03; R.C. 2901.05(A); R.C. 2929.12; Sentencing Hr'g T.p. 24-26."

**{¶9}** Tate argues the trial court's reliance on three "seriousness" factors under R.C. 2929.12(B)(6) was erroneous. First, he argues that it erred in finding his relationship with the victim facilitated the offense. Instead, he argues "to facilitate" means to make something easier and claims that although Tate had a relationship with the victim, this relationship did not make the commission of the offense easier.

**{¶10}** A felony sentence is governed primarily by R.C. 2953.08(G)(2):

**{¶11}** "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶12}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶13}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

3

**{¶14}** "(b) That the sentence is otherwise contrary to law."

**{¶15}** Appellate review of felony sentencing is highly deferential since the ""the 'clear and convincing' standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings."" *State v. Withrow*, 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, ¶22, quoting *State v. Salyer*, 2d Dist. Champaign No. 2013-CA-60, 2015-Ohio-2431, ¶21, quoting *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶21 (8th Dist.). Accordingly, this court can only modify or vacate a sentence if we find by clear and convincing evidence that the record does not support the sentencing court's decision or if the sentence is contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d. 1231, ¶7.

**{¶16}** Tate does not allege that his sentence is not within the applicable statutory ranges. He only challenges the trial court's statutory seriousness findings.

**{¶17}** "'[A] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors.' *State v. Martin*, 2nd Dist. Clark No. 2014-CA-69, 2015-Ohio-697, ¶8." *State v. Talley*, 11th Dist. Trumbull No. 2014-T-0098, 2015-Ohio-2816, ¶ 15.

**{¶18}** R.C. 2929.12(B) states:

**{¶19}** "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, *and any other relevant factors*, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

4

{¶20} "* * *

{¶21} "(6) The offender's relationship with the victim facilitated the offense." (Emphasis added.)

{¶22} "The trial court need not specifically address each and every factor that it considers, but may instead just indicate that it has considered the statutory factors." *State v. Manley*, 3d Dist. Allen No. 1-11-04, 2011-Ohio-5082 at ¶22, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1.

{¶23} The trial court stated at Tate's sentencing that it considered the purposes and principles of felony sentencing as well as the R.C. 2929.12 factors. It then found the presence of one, enumerated seriousness factor, i.e., R.C. 2929.12(B)(6), and two other "relevant factors" upon deeming Tate's offense more serious than conduct normally constituting the offense of voluntary manslaughter. Specifically, it explained that Tate's conduct was more serious than most voluntary manslaughter cases since Tate's relationship with the victim facilitated the offense. It also noted that the threat in Tate's case was not as imminent as in most voluntary manslaughter cases and that his offense was more serious based on Tate's fleeing from the state. It stated in part,

{¶24} "[T]he court has to accept that there was some evidence of sudden passion, provocation that occurred. But in this case the Defendant, the provocation was a threat that was made, but it wasn't an immediate threat in the sense that this is - - 'I'm going to do this right now.' It was a threat that was made that obviously got the Defendant angered. Doesn't justify killing somebody. The fact of the matter as well is that the Defendant then left the scene, went back inside the house, came back outside and shot the victim at pointblank range. * * * Again using the gun that he wasn't supposed to be in possession of.

5

**{¶25}** "And then you did flee not only the scene, but fled the State of Ohio, and circumstances which would give rise to such sudden rage and passion to provoke them, * * * the Defendant would realize what happened. * * * If you were provoked into doing this, once you came down from that provocation, that passion, you should be there to explain what happened. * * *

**{¶26}** "As for factors indicating it is less serious, the Court doesn't find any are present in this case."

**{¶27}** Tate claims that his relationship with the victim did not facilitate the offense. Instead, he claims that facilitate should be given its common definition of making something easier, and since Tate and the victim's relationship did not make the commission of the crime *easier* to commit, this factor should not apply.

**{¶28}** As Tate argues, "facilitate" is defined as "to make easier." *The Merriam Webster Dictionary*, 270 (1994). Upon applying this seriousness factor, the Third District Court of Appeals in *State v. Manley*, 3d Dist. Allen No. 1-11-04, 2011-Ohio-5082, ¶20, found that the relationship in issue there did not make the commission of the crime easier. To the contrary, it concluded that the relationship provided appellant motive since he and the victim had a combative relationship. It explained: "[i]n order to have the relationship facilitate the offense, the defendant must have used his relationship with the victim to help commit the offense. * * * In other words, the defendant must have used the relationship to allow him to commit the offense in a manner which he could not have accomplished without the relationship." *Id.* We agree.

**{¶29}** For example, in *State v. Hoover*, 2d Dist. Champaign No. 2013-CA-8, 2013-Ohio-4612, the Second District concluded that Hoover's relationship with the victim "facilitated" the offense because his phone harassment offense was easier to

6

commit as a consequence of his relationship with the victim, explaining that he knew the victim's telephone number as a result of their relationship. *Id*. at ¶15.

**{¶30}** Further, in *State v. Bentley*, 3rd Dist. Marion No. 9-12-31, 2013-Ohio-852, ¶19, the Third District Court of Appeals upheld the trial court's application of this seriousness factor because the defendant used his relationship with the victim, his girlfriend's daughter who regarded him as a father, to make the sexual battery offenses easier to commit.

**{¶31}** As Tate contends, there is nothing evidencing that his family relationship with the victim made the commission of the crime easier to commit. The relationship provided the opportunity and motive to commit the offense because the victim would not have been in attendance at appellant's house on the day in question, and the victim would not have known details from appellant's past used to provoke appellant absent the relationship. However, the application of this seriousness factor requires the relationship to *facilitate* the commission of the offense, which means that the relationship makes the commission of the offense easier. *Manley*, supra, citing *State v. McDade*, 6th Dist. Ottawa Nos. OT-06-001, OT-06-004, 2007-Ohio-749.

**{¶32}** Furthermore, our prior decision in *State v. Davis*, 11th Dist. Lake No. 2002-L-188, 2004-Ohio-792, ¶13, and the Tenth District's decision in *State v. Holsinger,* 10th Dist. Franklin No. 00AP-216, 2000 Ohio App. LEXIS 4671, at *14 (Oct. 10, 2000), relied on by the state, do not address this precise issue and instead discuss the nature and the extent of the *relationship* between the offender and victim. Neither *Davis* nor *Holsinger* addresses whether the relationship in issue in those cases *made the offenses easier*, and as such, are inapplicable.

7

{¶33} Thus, consistent with *Manley*, supra, and a plain reading of the term facilitate, appellant's first assigned error has merit. Notwithstanding, the error does not warrant reversal in light of the presence of the other seriousness factors and the court's finding that appellant had a very high likelihood of recidivism.

{¶34} Specifically, the trial court found appellant's easy access to a firearm in spite of his status as a convicted felon and the fact that the victim's threat was verbal only and not imminent as "other relevant" seriousness factors. It also relied on appellant's decision to flee the scene of the crime requiring his extradition from Michigan as an aggravating factor. Moreover, the sentencing court placed great emphasis on appellant's likelihood of recidivism based on his "horrible history," which began as a juvenile and includes several prison terms for state and federal offenses involving violence, and repeated federal probation violations. R.C. 2929.12(D)(1) and (2). It noted that appellant has spent more than half of his adult life in prison. The court also indicated that appellant had not responded favorably to past criminal sanctions and that he lacked any genuine remorse. R.C. 2929.12(D)(3) and (5). Accordingly, the error does not warrant reversal.

{¶35} Tate next challenges the trial court's finding that his offense was more serious than other voluntary manslaughter cases since the threat against him was not very imminent. Tate claims the trial court erroneously confused the elements for self defense with voluntary manslaughter in its discussion. He alleges the trial court's confusion between the two resulted in its imposition of a sentence contrary to law. We disagree.

{¶36} The trial court's reference to the fact the threat in Tate's case was not as imminent as the threat in other voluntary manslaughter cases is a relevant factor

8

considered under the "any other relevant factors" aspect of R.C. 2929.12(B). The trial court explained that although the threat in Tate's offense was inflammatory, it was tenuous since it did not involve any overt physical threat of harm to Tate or his son. Thus, the trial court's consideration of this finding in support of its conclusion that Tate's offense was more serious than other similar offenses was appropriate.

{¶37} Third and finally, Tate alleges that the trial court erroneously considered his fleeing after the offense as part of the "conduct constituting the offense." The trial court explained that Tate's sudden rage should have subsided after Brown was shot, and instead of running, Tate should have been available to explain the circumstances leading up to Brown's death to police. The court found that Tate's decision to flee was another relevant factor making his offense more serious than other voluntary manslaughter offenses.

{¶38} Tate has not directed our attention to anything evidencing that this finding is clearly and convincingly contrary to law or unsupported by the record. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d. 1231, ¶7. Thus, his second assigned error also lacks merit.

{¶39} The judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL , J., concurs in judgment only.