[Cite as *State v. Deal*, 2012-Ohio-3903.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  12-12-04

    v.

RICKY E. DEAL,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2011 CR 43

Judgment Affirmed

Date of Decision:   August 27, 2012

APPEARANCES:

    *Joseph A. Benavidez*  for Appellant

    *Todd C. Schroeder*  for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant Ricky Deal appeals the December 23, 2011, judgment of the Putnam County Common Pleas Court sentencing him to a total of six years in prison following a jury trial wherein he was found guilty of Operating a Vehicle Under the Influence ("OVI") in violation of R.C. 4511.19(A)(1)(a) & (G)(1)(e), a felony of the third degree, Tampering with Evidence in violation of R.C. 2921.12(A)(2), a felony of the third degree, and Identity Fraud in violation of R.C. 2913.49(B)(2), a felony of the fifth degree.

{¶2} The facts relevant to this appeal are as follows. On April 2, 2011 at approximately 1:11 A.M., a man identifying himself as Larry Deal was pulled over by Officer Joseph Quintero for driving 69 mph in a 55 mph zone. The man was, in fact, Ricky Deal using the name and social security number of his brother Larry who, unlike Ricky, had no prior OVI convictions.

{¶3} After admitting that he had been drinking, failing two field sobriety tests and stating he was unable to perform the walk-and-turn test, Ricky, still identifying himself as Larry Deal, was transported to the Putnam County jail for a blood alcohol concentration ("BAC") test. Ultimately after being transported, Ricky refused to do the BAC test. In refusing, Ricky signed his refusal form under the name of "Larry Deal."

{¶4} "Larry Deal" was then charged with, *inter alia*, OVI. Ricky was arraigned as Larry Deal and pled not guilty to the crime. Ricky then signed an OR bond as Larry Deal so that he could be released pending trial.

{¶5} Subsequently it was learned that Ricky had used his brother Larry's name during the proceedings. Ricky was then indicted on April 29, 2011, for OVI in violation of R.C. 4511.19(A)(1)(a) & (G)(1)(e), a felony of the third degree based on Ricky's prior OVI convictions. Ricky was also indicted for Tampering with Evidence in violation of R.C. 2921.12(A)(2), a felony of the third degree, and Identity Fraud in violation of R.C. 2913.49(B)(2), a felony of the fifth degree.

{¶6} On August 23, 2011, Ricky entered not guilty pleas to the charges in the indictment.

{¶7} The case proceeded to a jury trial on November 8-9, 2011. On November 9, 2011 the jury found Ricky guilty of all charges.

{¶8} A sentencing hearing was held on December 13, 2011. The court found that the Identity Fraud and the Tampering with Evidence charges were allied offenses of similar import and merged them for purposes of sentencing. The State elected to proceed with sentencing on the Tampering with Evidence conviction. (Doc. 63). Ultimately Ricky was sentenced to four years incarceration for the OVI, and two years incarceration for Tampering with Evidence. Ricky's sentences were to be served consecutively for a total period of incarceration of six

years. The sentence was memorialized in a "Judgment Entry of Sentence" filed by the court December 23, 2011.

{¶9} It is from the December 23, 2011 "Judgment Entry of Sentence" that Ricky appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**

**THE JURY ERRED IN FINDING APPELLANT GUILTY AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO HAVE FOUND ALL ESSENTIAL ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT.**

**ASSIGNMENT OF ERROR 2**

**THE PROSECUTION PREJUDICED THE OUTCOME OF THE CASE THROUGH IMPROPER CLOSING ARGUMENT.**

*First Assignment of Error*

{¶10} In Ricky's first assignment of error he argues there was insufficient evidence to convict him and that his convictions were against the manifest weight of the evidence. Ricky specifically argues that "there was no evidence presented that [Ricky] was under the influence of alcohol * * * at the time he was operating the vehicle." (Appt. Br. at 4).

{¶11} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively' different. *Eastley v.*

*Volkman*, --- Ohio St.3d ---, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78

Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶12} The Ohio Supreme Court has set forth the sufficiency of the evidence

test as follows:

> **An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.**

*State v. Jenks*, 61 Ohio St.3d 259 (1991), at syllabus, superseded by state

constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio

St.3d 89 (1997); *Eastley*, *supra*, at ¶ 10.

{¶13} Unlike our review of the sufficiency of the evidence, an appellate

court's function when reviewing the weight of the evidence is to determine

whether the greater amount of credible evidence supports the verdict. *Eastley*,

*supra*, at ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In reviewing

whether the trial court's judgment was against the weight of the evidence, the

appellate court sits as a "thirteenth juror" and examines the conflicting testimony.

*Id*. In doing so, this Court must review the entire record, weigh the evidence and

all of the reasonable inferences, consider the credibility of witnesses, and

determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Andrews*, 3d Dist. No. 1-05-70, 2006-Ohio-3764, ¶ 30, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *Thompkins*, 78 Ohio St.3d at 387.

{¶14} In this case, Ricky was indicted for, and found guilty of, OVI, Tampering with Evidence, and Identity Fraud. The statutes corresponding to these crimes as indicted read as follows.

**OVI -- R.C. 4511.19**

**(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:**

**(a)  The person is under the influence of alcohol, a drug of abuse, or a combination of them.**

**\* \* \***

**(G)(1) Whoever violates any provision of divisions (A)(1)(a) to (i) or (A)(2) of this section is guilty of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them.**

**\* \* \***

**(e)  An offender who previously has been convicted of or pleaded guilty to a violation of division (A) of this section that was a felony, regardless of when the violation and the conviction or guilty plea occurred, is guilty of a felony of the third degree. The court shall sentence the offender to all of the following:**

**(i)    If the offender is being sentenced for a violation of division (A)(1)(a), (b), (c), (d), (e), or (j) of this section, a mandatory prison term of one, two, three, four, or five years as required by and in accordance with division (G)(2) of section 2929.13 of the Revised Code if the offender also is convicted of or also pleads guilty to a specification of the type described in section 2941.1413 of the Revised Code or a mandatory prison term of sixty consecutive days in accordance with division (G)(2) of section 2929.13 of the Revised Code if the offender is not convicted of and does not plead guilty to a specification of that type. The court may impose a prison term in addition to the mandatory prison term. The cumulative total of a sixty-day mandatory prison term and the additional prison term for the offense shall not exceed five years. In addition to the mandatory prison term or mandatory prison term and additional prison term the court imposes, the court also may sentence the offender to a community control sanction for the offense, but the offender shall serve all of the prison terms so imposed prior to serving the community control sanction.**

**Tampering with Evidence -- R.C. 2921.12**

**(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:**

**\* \* \***

**(2)    Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.**

**Identity fraud -- R.C. 2913.49(B)(2)**

**(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:**

＊ ＊ ＊

**(2) Represent the other person's personal identifying information as the person's own personal identifying information.**

{¶15} To prove Ricky was guilty of the crimes alleged in the indictment, the State first called Brian Williams of the Hancock County Sheriff's Office. Williams identified State's Exhibits related to Ricky's prior OVI convictions. (Tr. 187-195). Such convictions included one from 1995, one from 1998, one from 2000, and multiple convictions in 2007. (*Id.*); (State's Ex. 1-8).

{¶16} The State then called Joseph Quintero. Quintero was the officer that stopped Ricky for speeding. Quintero testified that when he pulled Ricky over, he noticed Ricky had a "glaze[d]" stare. (Tr. at 205). Quintero testified that Ricky had to repeat his name four times because Quintero could not understand the slurred speech. (*Id.*) Quintero testified that Ricky identified himself as Larry Deal providing Larry's social security number. (Tr. at 207).

{¶17} According to Quintero, Ricky was not walking with good balance, his eyes were red, and Ricky had said he had been drinking. (Tr. at 209). Quintero also testified that there was a wet spot on the front of Ricky's pants that he assumed was urine. (Tr. at 211). Quintero testified that Ricky told him that Ricky had been at a party drinking and was made to leave when he caused problems. (Tr. at 210). Quintero testified that minutes later, when Quintero asked

Ricky about the party, Ricky asked Quintero how Quintero knew about the party. (Tr. at 211).

{¶18} Quintero testified that he administered the Horizontal Gaze Nystagmus (HGN) test on Ricky. (Tr. at 215). Quintero testified that Ricky completed the test but Ricky failed, showing six of six clues for impairment. (Tr. at 215-216). According to Quintero, Ricky said an injury prevented him from performing the walk and turn test, but Ricky did undertake the one leg stand test, which Ricky also failed. (Tr. at 217). Further, Quintero testified that when he searched Ricky's car, he found a half bottle of Jack Daniel's on the right front passenger floor board. (Tr. at 218).

{¶19} According to Quintero, Ricky refused to do a BAC test when Quintero took him back to the station. (Tr. at 225-26). Ricky, still identifying himself as Larry Deal, signed his name on the refusal form as "Larry Deal," and signed his name on the citation Quintero wrote out as "Larry Deal." (Tr. at 227-229).

{¶20} Quintero testified that it was April 6, 2011, when he learned that the man who had identified himself as Larry Deal was, in fact, Ricky Deal as Larry Deal had called Quintero once he was apprised of the fact that he had been charged with a crime. (Tr. at 231). The real Larry Deal met with Quintero and

Quintero did not recognize him. (Tr. at 231). Subsequently a warrant was issued for Ricky.

**{¶21}** The next witness the State called was Abbot Carter of the Ottawa Police Department. Carter testified that he witnessed Ricky sign Larry Deal's name on the 2255 refusal form for the BAC test. (Tr. at 248). Carter further testified that the man identifying himself as Larry Deal had slurred speech, glassy eyes and there was an odor of alcohol about him. (Tr. at 252).

**{¶22}** The State then called Larry Deal. Larry Deal testified that Ricky did not have Larry's permission to use Larry's identity. (Tr. at 281). Larry Deal also testified that Ricky later apologized for using his identity. (Tr. at 282).

**{¶23}** Next the State called Kim Redman, a Putnam County Municipal Court Clerk. Redman identified the audio tape of the arraignment of "Larry Deal" and also identified a paper that was provided to "Larry" at arraignment which was signed by Ricky as "Larry Deal."

**{¶24}** The State then called Susan Maag, the Clerk of Courts for Putnam County Municipal Court. Maag testified that following the arraignment of "Larry Deal" she recalled Ricky coming to her to sign his bond to be released on his own recognizance. (Tr. at 292-294). Maag testified she recognized Ricky as the man that signed his name after arraignment as "Larry Deal." (*Id.*)

**{¶25}** Finally, the State called Roy Sargent, a detective from the Putnam County Sherriff's Office. Sargent testified that he listened to phone calls made by Ricky wherein Ricky admitted to using his brother's identification and name on the ticket he was given, in the courtroom at arraignment, and in signing the documents at the court proceedings. (Tr. at 299). The State then rested its case.

**{¶26}** In his defense, Ricky first called Lee Ann Ewing who testified that she was with Ricky at a gathering earlier in the night when he was pulled over until around 11 p.m. (Tr. at 321). Lee Ann testified she saw Ricky have one beer but that she was not watching Ricky all night. (Tr. at 323). Lee Ann testified she later picked Ricky up after he was charged for OVI as Larry Deal and that at that time she thought Ricky did not sound drunk. (Tr. at 324). Lee Ann also testified she did not notice a wet spot on his pants. (Tr. at 324).

**{¶27}** Ricky then called Toby Deal, his nephew, who had hosted a gathering Ricky attended earlier that night. Toby testified that Ricky was never asked to leave and that Ricky had one or two beers at the gathering. (Tr. at 333).

**{¶28}** Based on the foregoing testimony and the exhibits entered into evidence, we find that there was sufficient evidence presented by the State to satisfy all elements of the crimes Ricky was charged with, namely, OVI, Tampering with Evidence, and Identity Fraud.

{¶29} Despite Ricky's argument on appeal that his convictions were also against the manifest weight of the evidence, there is substantial credible evidence in the record to support the jury's conviction. While Ricky argues on appeal that Ricky only failed the sobriety tests administered by Officer Quintero because it was windy and that Officer Quintero performed the sobriety tests incorrectly, there is ample credible evidence to find that Ricky was intoxicated.

{¶30} Testimony was provided by Patrolman Quintero that Ricky's speech was so slurred Quintero had to have Ricky repeat his name four times, that Ricky's eyes were red, that Ricky failed the two sobriety tests he was given, that Ricky admitted to drinking, that Ricky had a wet spot on the front of his pants and that Ricky had a half bottle of Jack Daniel's in his car. Moreover, Officer Carter testified that the man identifying himself as Larry had slurred speech, glassy eyes and smelled of alcohol. Accordingly we do not find that the factfinder "clearly lost its way in convicting Ricky of OVI.

{¶31} As to the Tampering with Evidence and the Identity Fraud charges, there was ample evidence to establish proof beyond a reasonable doubt of Ricky using the identity of his brother Larry Deal throughout the stop and the early court proceedings. Ricky signed his brother Larry's name on the traffic ticket, presented himself as Larry in court for arraignment, then signed official court documents at arraignment as Larry. Under these circumstances, we do not find that the

factfinder "clearly lost its way" in convicting Ricky of Tampering with Evidence and Identity Fraud.

{¶32} Based on the foregoing we find that there was sufficient evidence to convict Ricky, and that Ricky's convictions were not against the manifest weight of the evidence.  Accordingly, Ricky's first assignment of error is overruled.

*Second Assignment of Error*

{¶33} In Ricky's second assignment of error he argues that statements made by the State in closing argument were improper and prejudiced the outcome of the trial.  Specifically Ricky argues that the State made comments regarding witnesses' credibility "and tried to establish that an officer should be held to higher credibility than other witnesses."  (Appt. Br. at 5).

{¶34} The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant.  *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 231.  "In making this determination, an appellate court should consider several factors:  (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant."  *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist. 1995).  "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'"  *Davis*,

Case No. 12-12-04

*supra*, at ¶ 231 quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

Prosecutorial misconduct is generally not grounds for reversal unless it so taints

the proceedings as to deprive the defendant of a fair trial. *State v. Johns*, 3d. Dist.

No. 13-04-23, 13-04-24, 13-04-25, 2005-Ohio-1694, ¶ 25.

**{¶35}** In this case, Ricky is claiming that the following portion of the

State's rebuttal closing argument was improper:

> **And in order to find the defendant not guilty on the OVI, the only way that could happen is for you to conclude that Officer Quintero lied about his observations; that Officer Carter lied about the odor of alcohol, the slurred speech, and the bloodshot eyes. That is the only way to find him not guilty. You must make that determination that those officers lied to you, because they presented to you a series of observations, any one of which could cause you to conclude that the defendant was under the influence of alcohol.**
>
> **You were also told about the conversation, the admissions to drinking and so forth. So, again, that's the only way you could find him not guilty of that offense.**
>
> ***But we know who the liar is.* It's not the officers, it's this defendant.**

(Emphasis Added.) (Tr. at 369).

**{¶36}** Ricky specifically objects to the italicized portion of the language

arguing that the language was improper and "extremely prejudicial" to the

defense. However, we do not find that this statement was improper, nor do we

find that it so tainted the proceedings as to deprive Ricky of a fair trial.

-14-

{¶37} First, the State was making a fair characterization of the evidence. Evidence had been presented at trial that Ricky had continuously lied and misled authorities about his identity. Second, in his own closing argument, Ricky's counsel questioned the credibility of the testimony of Patrolman Quintero. As a result, the prosecutor's statement is in line with responding to defense allegations about Quintero. Finally, the evidence against Ricky was substantial and there is no showing how this one statement prejudiced Ricky so seriously that a new trial is warranted. Accordingly, Ricky's second assignment of error is overruled.

{¶38} For the foregoing reasons Ricky's assignments of error are overruled and the judgment of the Putnam County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**