[Cite as *State v. Frazier*, 2013-Ohio-142.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  17-11-06

     v.

DAVID A. FRAZIER, II          O P I N I O N

     DEFENDANT-APPELLANT.

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  17-11-07

     v.

DAVID A. FRAZIER, II          O P I N I O N

     DEFENDANT-APPELLANT.

Appeals from Shelby County Common Pleas Court
Trial Court Nos. 08CR00306 and 10CR00125

Judgment Affirmed in Case No. 17-11-06, and
Appeal Dismissed in Case No. 17-11-07

Date of Decision:   January 22, 2013

Case No. 17-11-06

APPEARANCES:

*E. Kelly Mihocik* **for Appellant**

*Ralph Bauer and Jeffrey J. Beigel* **for Appellee**

**PRESTON, P.J.**

{¶1} Defendant-appellant, David Frazier, appeals the Shelby County Court of Common Pleas' conviction by jury trial of burglary. Frazier argues that law enforcement violated his Sixth Amendment rights by failing to cease questioning after he invoked his right to counsel, that the trial court committed error and his counsel was ineffective for not adequately advising his wife that she did not need to testify against him, that his conviction is not supported by the evidence, and that his trial counsel was ineffective by not challenging an identification he contends was unduly suggestive. For the reasons that follow, we affirm the trial court's judgment in appellate case number 17-11-06 and dismiss appellate case number 17-11-07.

{¶2} The present case stems from an incident that occurred on November 5, 2008. (Jury Trial Tr. Vol. I at 91). Daniela Tangeman left her home for approximately 20 minutes to take her son to school. (*Id*.). As she was driving back from the school, she observed a man in a camouflage jacket and stocking hat running in the opposite direction through the development. (*Id*. at 93). When she

returned to her house, she discovered that someone had broken into her home and stolen several items, primarily jewelry. (*Id*. at 96, 136). Daniela immediately called her husband, Jerry Tangeman, who is a police officer, and law enforcement began surveying the area. (*Id*. at 88, 96, 205). Patrolman Jim Jennings observed Frazier jogging out of a wood line between the Tangemans' housing development and an apartment complex. (*Id*.). Police officers subsequently brought Frazier to the police station where Frazier consented to give a DNA sample. (Motion to Suppress Hearing Tr. at 15, 21-22).

{¶3} On November 13, 2008, the Shelby County Grand Jury indicted Frazier on one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree, in case number 08CR306. (Case No. 08CR306, Doc. No. 1).

{¶4} On March 9, 2010, the trial court arraigned Frazier. (Case No. 08CR306, Doc. No. 13). Frazier pled not guilty to the charge. (*Id*.).

{¶5} On June 8, 2010, the Shelby County Grand Jury indicted Frazier on eight additional counts of burglary in violation of R.C. 2911.12(A)(4), felonies of the fourth degree, in case number 10CR125. (Case No. 10CR125, Doc. No. 1).

{¶6} On June 14, 2010, the trial court arraigned Frazier on the new burglary charges. (Case No. 10CR125, Doc. No. 8). Frazier pled not guilty. (*Id*.).

{¶7} On July 26, 2010, Frazier filed a motion to suppress in case number 08CR306. (Case No. 08CR306, Doc. No. 71). On August 20, 2010, the State

filed its motion in opposition. (Case No. 08CR306, Doc. No. 87). Following a hearing, the trial court denied Frazier's motion in a judgment entry dated August 31, 2010. (Case No. 08CR306, Doc. No. 90).

{¶8} Case number 08CR306 proceeded to a jury trial on December 21-22, 2010. (Case No. 08CR306, Doc. No. 220). The jury found Frazier guilty of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree. (*Id.*).

{¶9} On January 14, 2011, Frazier pled guilty to three counts of the reduced charge of receiving stolen property in violation of R.C. 2913.51, a felony of the fifth degree, in case number 10CR125. (Case No. 10CR125, Doc. No. 47). The State dismissed the remaining counts. (Case No. 10CR125, Doc. No. 46).

{¶10} On February 11, 2011, the trial court sentenced Frazier to six years imprisonment in case number 08CR306. (Case No. 08CR306, Doc. No. 231). On that same day, the trial court sentenced Frazier to 11 months imprisonment on each of the three counts of burglary in case number 10CR125, to be served consecutively to each other for an aggregate sentence of 33 months imprisonment. (Case No. 10CR125, Doc. No. 56). The trial court further ordered Frazier to serve his sentence in 10CR306 consecutively to his sentence in case number 08CR306, for a total sentence of 8 years and 9 months imprisonment. (*Id.*); (Case No. 08CR306, Doc. No. 231).

{¶11} On March 3, 2011, Frazier filed a notice of appeal in each case. (Case No. 08CR306, Doc. No. 247); (Case No. 10CR125, Doc. No. 79). On October 24, 2011, this Court affirmed the trial court's judgments. *State v. Frazier*, 3d Dist. Nos. 17-11-06, 17-11-07, 2011-Ohio-5445.

{¶12} On February 2, 2012, Frazier filed an application to reopen his appeal based on ineffective assistance of appellate counsel. On April 17, 2012, this Court granted Frazier's motion. Frazier now raises six assignments of error for our review. As an initial matter, we note that all of Frazier's assignments of error pertain to case number 08CR306 (appellate case number 17-11-06). Since Frazier has failed to raise any assignments of error in case number 10CR125 (appellate case number 17-11-07) as required by App.R. 16(A)(3), we dismiss the appeal for want of prosecution. *State v. Harshman*, 3d Dist. Nos. 13-12-02, 13-12-03, 13-12-14, 2012-Ohio-3901, ¶ 6, citing *State v. Matthieu*, 3d Dist. Nos. 10-02-4, 10-02-05, 2003-Ohio-3430, ¶ 10. We turn now to the assignments of error Frazier has raised in case number 08CR306. For the purposes of our discussion, we elect to address the assignments of error out of the order Frazier raises them in his brief and consolidate them where appropriate.

### Assignment of Error No. I

**If a suspect is being interrogated, all questioning by law enforcement personal [sic] must cease if the suspect makes an unequivocal request for counsel. Fourth, Fifth, and Sixth Amendment to the United States Constitution; Sections 10 and**

**14, Article I of the Ohio Constitution (Aug. 10 Decision/Order on Def.'s Mot. to Suppress; Feb. 11, 2011 Judgment Entry of Sentencing.)**[1]

{¶13} In his first assignment of error, Frazier argues the trial court erred by denying his motion to suppress DNA evidence. Frazier contends that law enforcement obtained his consent to give a DNA sample after he had invoked his right to counsel. Frazier further argues that since he had invoked his right to counsel, law enforcement obtained the DNA sample in violation of his Fourth, Fifth, and Sixth Amendment rights, and the evidence should have been suppressed.

{¶14} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*

{¶15} When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent,

---

[1] We note that Frazier appears to present some of his arguments as propositions of law rather than assignments of error. App. R. 16(A) requires an appellant to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Our Local Appellate Rule 11 governs assignments of error and provides, "(A) Each assignment of error must be separately argued in the briefs unless the same argument, and no other, pertains to more than one assignment of error. 'Propositions of law' may not be substituted for assignments of error." An egregious failure to comply with App.R. 16 may result in the dismissal of the appeal. *Wasinski v. PECO II, Inc.*, 3d Dist. Nos. 3-08-14, 3-08-16, 2009-Ohio-2615, ¶ 15, citing *In re Estate of Wilhelm*, 7th Dist. No. 02CA134 (Aug. 19, 2003). In the interest of justice, we will treat Frazier's propositions of law as assignments of error.

credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶16} Frazier first argues that law enforcement violated his Fifth and Sixth Amendment rights by taking his DNA sample after he had invoked his right to counsel. The Fifth Amendment provides individuals with a privilege against self-incrimination that is also guaranteed by Section 10, Article I of the Ohio Constitution, which states, "[n]o person shall be compelled, in any criminal case, to be a witness against himself." *State v. Wilcox*, 10th Dist. No. 05AP-972, 2006-Ohio-6777, ¶ 43, citing *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489 (1964). As a result, law enforcement must advise an individual of his constitutional rights when initiating questioning after the individual has been taken into custody. *Miranda v. Arizona*, 384 U.S. 436, 471-472, 86 S.Ct. 1602 (1966). If an individual requests counsel, law enforcement must stop the interrogation until an attorney is present or the individual initiates communication himself. *Edwards v. Arizona*, 451 U.S. 477, 481, 101 S.Ct. 1880 (1980).

{¶17} In contrast, the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." An individual's Sixth Amendment right to counsel does

not attach until the State has initiated criminal proceedings through a formal charge, a preliminary hearing, an indictment, a bill of information, or an arraignment. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877 (1972).

{¶18} Frazier also argues that law enforcement violated his Fourth Amendment rights by obtaining his consent to provide a DNA sample. Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment- subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). Voluntary consent is a valid exception to the warrant requirement. *Id*. The Fourth Amendment test for whether an individual's consent to search is valid is whether the consent was voluntary based on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 221 (1973). The State has the burden of proving the consent was voluntary by clear and convincing evidence. *State v. Pierce*, 125 Ohio App.3d 592, 598 (10th Dist.1998), citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

{¶19} The trial court found that Frazier was not in custody when he invoked his right to counsel. (Case No. 08CR306, Doc. No. 90). Custody encompasses a formal restraint or restraint of the degree associated with an arrest. *State v. Byrne*, 12th Dist. Nos. CA2007-11-268, CA2007-11-269, 2008-Ohio-4311, ¶ 12, citing *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517

(1983). "The relevant inquiry is whether a reasonable person in the suspect's position would understand that he was in the custody of the police at the time of the interrogation." *Byrne* at ¶ 12, citing *Berkemer v. McCarty*, 468 U.S. 420, 422, 104 S.Ct. 3138 (1984). The fact that the questioning occurs at a police station or that the individual questioned is a suspect does not necessarily mean the individual was subject to a custodial interrogation. *State v. Biros*, 78 Ohio St.3d 426, 440 (1997).

**{¶20}** In the present case, Detective Jack Baker testified that he went to Frazier's house to request that he come to the police station. (Motion to Suppress Hearing Tr. at 15). Detective Baker transported Frazier to the police station. (*Id.* at 16-18). Detective Baker testified that he did not believe he handcuffed Frazier. (*Id.*). Detective Baker further testified that he informed Frazier he was free to leave at any time and did not review his *Miranda* rights with him. (*Id.* at 19). Detective Baker testified that Frazier was coherent, alert, and "seemed willing to answer my questions and did not seem to be frazzled." (*Id.* at 13). Detective Baker testified that Frazier requested an attorney, and at that point he stopped questioning Frazier and left the room. (*Id.* at 20-21). Detective Baker testified that Frazier never requested to leave. (*Id.* at 19).

**{¶21}** Patrolman Jeremy Lorenzo testified that he did not recall whether he was present in the room while Detective Baker questioned Frazier. (*Id.* at 28).

Patrolman Lorenzo testified that he did not ask Frazier any questions about the case after Frazier requested an attorney, but that he did obtain Frazier's consent to provide a DNA sample. (*Id*. at 29, 35). Patrolman Lorenzo testified that he reviewed the form with Frazier and took his DNA sample. (*Id*. at 29). Patrolman Lorenzo further testified that the door to the interview room was unlocked while Frazier was in the room. (*Id*. at 45).

{¶22} Frazier testified at the hearing on his motion to suppress and disputed law enforcement's account of the questioning as voluntary. (*Id*. at 47). Frazier testified that Detective Baker picked him up near the apartment complex, handcuffed him, and placed him in the police car. (*Id*. at 54). Frazier further testified that Detective Baker stopped at Frazier's house to request that his wife consent to a search of the home, but that Frazier remained handcuffed and in the car. (*Id*.). Frazier testified that he repeatedly requested an attorney while he was at the police station, but that law enforcement continued to ask him questions. (*Id*. at 61). Frazier testified that he consented to give the DNA sample because he believed law enforcement would not permit him to leave otherwise. (*Id*. at 52).

{¶23} As the trier of fact, the trial court is in the best position to make credibility determinations. *Burnside* at ¶ 8. The trial court found that law enforcement transported Frazier from his residence to the police department, that Detective Baker advised Frazier that he was not under arrest and was free to leave

at any time, that Frazier invoked his right to counsel and indicated he wanted to end the interview, and that Detective Baker stopped questioning at that point. (Case No. 08CR306, Doc. No. 90). The trial court also found that Detective Lorenzo entered the room and asked Frazier additional questions before ending the interview. Detective Lorenzo then requested Frazier to consent to a DNA sample. (*Id.*). Frazier signed the consent form and law enforcement took the DNA sample. (*Id.*). In light of the trial court's findings of fact, we agree that a reasonable person in Frazier's position would not believe that he was in custody at the time of the questioning. Frazier knew he was not under arrest and was free to leave at any time, and we do not find any evidence that Frazier's will was overborne.

{¶24} The Ninth District Court of Appeals has stated that the right to counsel, regardless of whether it is requested or not, attaches only when a suspect is in custody. *State v. Fry*, 61 Ohio App.3d 689, 692 (9th Dist.1988), citing *State v. Sadler*, 85 Ore.App. 134, 137 (1987), citing *Minnesota v. Murphy*, 465 U.S. 420, 424, 102 S.Ct. 1136, 1140 (1984). The Court further held that "a police officer may continue to question a suspect in a noncustodial situation, even if the suspect has made a request for counsel, as long as the officer's persistence in questioning does not render statements made by the suspect involuntary." *Id.*, citing 25 Ohio Jurisprudence 3d 599-606, Criminal Law, Sections 336-337 (1981).

**{¶25}** The Eighth District Court of Appeals addressed a similar situation to the present case in *State v. Bolton*, 8th Dist. No. 96385, 2012-Ohio-169. In *Bolton*, the defendant was arrested on a valid arrest warrant. *Id*. at ¶ 20. The defendant contended that law enforcement obtained his consent to provide a DNA sample after he invoked his right to counsel during a custodial interrogation. *Id*. at ¶ 20-21. The Eighth District distinguished physical evidence such as a DNA sample from physical evidence discovered as a result of an incriminating statement, holding that a request for consent to search in this context is not an interrogation under *Miranda*. *Id*. at ¶ 23. The Eighth District thus held that "consent given after the invocation of *Miranda* rights is valid as long as it is voluntary." *Id*. The Second District Court of Appeals has similarly held that "[a] consent to search is not testimonial, and therefore does not implicate the Fifth Amendment rights that *Miranda* is designed to protect." *State v. Tobias*, 2d Dist. Nos. 17975, 99-CR-803, *4 (Sept. 15, 2000), citing *State v. Lee*, 2d Dist. No. 96 CA 115 (Oct. 31, 1997). After reviewing the record and applicable law, we cannot find that Patrolman Lorenzo's request that Frazier consent to providing a DNA sample violated his Fifth and Sixth Amendment right to counsel when Frazier was not in custody during the questioning and was free to leave at any time.

**{¶26}** We also cannot find any evidence that Frazier's consent to search is invalid. Frazier knew he was not under arrest and was free to leave at any time.

We also cannot find any sign that law enforcement's actions were so coercive that Frazier's will was overborn. Consequently, law enforcement did not violate Frazier's Fourth Amendment rights when it obtained his consent to provide a DNA sample.

{¶27} Frazier's first assignment of error is, therefore, overruled.

### Assignment of Error No. IV

**Mr. Frazier's conviction is not supported by credible evidence. Fifth and Fourteenth Amendments to the United States Constitution; and Sections 10 and 16, Article I of the Ohio Constitution (Feb. 11, 2011 Judgment Entry on Sentencing.)**

### Assignment of Error No. V

**There was insufficient evidence to establish that Mr. Frazier committed burglary. Fifth and Fourteenth Amendments to the United States Constitution, Section 10 and 16, Article I of the Ohio Constitution. (Feb. 11, 2011 Judgment Entry on Sentencing.)**

{¶28} In his fourth and fifth assignments of error, Frazier argues his conviction is against the manifest weight of the evidence and that there is insufficient evidence to establish that he committed the burglary. In particular, Frazier contends that law enforcement's investigation is unreliable because the victim of the crime was a detective. Frazier argues that law enforcement never recovered the missing property, that witnesses were unable to positively identify him when law enforcement brought him to the scene shortly after the incident occurred, and that the State failed to prove Frazier entered the Tangemans' home.

{¶29} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶30} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶31} Frazier was convicted of burglary in violation of R.C. 2911.12(A)(2). The statute states:

No person, by force, stealth, or deception, shall do any of the following:

* * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense * * *.

R.C. 2911.12(A)(2).

{¶32} At trial, Daniela testified that she drove her son to school the morning of November 5, 2008. (Jury Trial Vol. I Tr. at 91). Daniela dropped her son off between 8:30 and 8:45 a.m., and then drove home. (*Id*. at 92). As she was driving down the street, she noticed a man running in the opposite direction. (*Id*. at 93). Daniela testified that she thought it was odd because the man was wearing a camouflage jacket and stocking hat, which she considered to be bulky clothing for a run on a warm day. (*Id*. at 93, 108). Daniela pulled into her garage, and

walked through the door, which faced the master bedroom. (*Id*. at 96). Daniela testified:

> I noticed all the drawers in our bedroom suite had been pulled out. And there were clothes on the floor, which is not how I left the house that morning. * * * I was a little concerned somebody might be in our house still. So I walked out of the bedroom and looked into our kitchen, and some of our kitchen drawers had also been pulled open. * * * I called my husband and I said, I think our house has been broken into.

(*Id*.). Daniela testified that some of her jewelry was missing, specifically her wedding band and engagement ring, a ring her father had given her, a few bracelets, and some miscellaneous jewelry. (*Id*. at 136). In addition, a jewelry box and a wallet with some old credit cards were also gone. (*Id*.).

{¶33} Vicki Smith testified that she was walking with her sister-in-law, Colleen Sawyer, on the morning of November 5, 2008. (*Id*. at 145). Smith testified that she observed something strange during their walk:

> as we come up on the first house on the corner, there was a gentleman that come out from the left side of the house. And we said greetings to each other. And he proceeded to walk the opposite way and we walked to the end of the cul-de-sac. I turned around and

> looked. And as I turned around, he had taken off running down the street.

(*Id*. at 145-146). Smith testified that the man was wearing dark blue jeans, white tennis shoes, a sweatshirt, jacket, and knit hat. (*Id*.). The jacket was camouflage and the sweatshirt was pulled up over the knit hat. (*Id*. at 146-147). Smith testified that she saw the man between 8:30 and 9:00 a.m. (*Id*. at 147). When they first went by the house and observed the man, the garage door was closed. (*Id*. at 149-150). They circled back during their walk and at that point the garage door was open. (*Id*.). Smith testified that they stopped at the house when law enforcement arrived to see if there was anything they could do to help. (*Id*. at 150). Some officers brought a man in a cruiser, and "[h]e was wearing dark blue jeans. And I really couldn't see the tennis shoes. But he had dark blue jeans on." (*Id*. at 151). Smith testified that the officers wanted her to identify the man in the cruiser, who was Frazier, as the man she had observed near the house. (*Id*. at 152). Smith testified that at the time, she thought Frazier was the man she had observed, but she was not sure because he was slouched in the back of the cruiser and she thought the man she had observed might have been taller. (*Id*.). While in court, Smith identified Frazier as the man she saw wearing the camouflage jacket during her walk. (*Id*. at 155).

{¶34} Sawyer testified that she was walking with Smith on November 5, 2008. (*Id*. at 186). Sawyer also observed a man in a camouflage jacket walk from around the corner of the house. (*Id*. at 187). Sawyer testified that she could not identify Frazier when the officers brought him in the cruiser because "the windows were a little bit dark and they didn't get him out of the vehicle." (*Id*. at 190). Sawyer testified that Frazier did not have the camouflage jacket on when he was in the cruiser. (*Id*. at 191). Sawyer testified that she later went to the police station where law enforcement showed her a picture of Frazier on the computer. (*Id*. at 191). Sawyer testified that she was then able to identify Frazier as the man she saw during her walk because he was out of the vehicle and standing up. (*Id*. at 199).

{¶35} Patrolman Jennings testified that he was on duty on November 5, 2008. (*Id*. at 204). Patrolman Jennings surveyed the area near Arrowhead Apartments after receiving the report of a burglary at the Tangeman residence. (*Id*. at 205). Patrolman Jennings testified, that "[w]hen I was pulling up the back lot, there is, like a horseshoe turn area behind the building, I noticed the Defendant jogging out of the wood line to the south of the apartments." (*Id*.). At that time, Frazier was wearing a sweatshirt, blue jeans, and gym shoes. (*Id*.). Patrolman Jennings asked Frazier why he was coming out of the wood line, and Frazier told him that "he was out for a jog for his cholesterol." (*Id*. at 208). Patrolman

Jennings testified that the wooded area did not have any running trails and that he did not believe Frazier's clothing was typical for running attire. (*Id*.). Patrolman Jennings testified that he would have patted Frazier down for weapons for officer safety before putting him in the cruiser, but that he did not find any weapons or contraband on Frazier. (*Id*. at 220).

{¶36} Officer Rodney Robbins testified that he responded to the burglary call as part of the canine unit on November 5, 2008. (*Id*. at 243). Officer Robbins attempted to locate a track with the canine from the Tangemans' yard. (*Id*. at 245). Officer Robbins testified:

[t]he canine picked up a track, which led us, I believe, it was southbound along Hoewisher Road. * * * And the canine turned west in between a couple of houses and we went down through a wooded area there. We tracked up to the creek. Canine wanted to go through the creek at that point. I pulled him out of the creek and continued to go down, I believe, it was southwest along the creek until we found a place where we could cross. At the time we were going southwest on the creek the canine actually lost the track. Once we crossed the creek and got back on the other side of the creek, which would have been the west side of the creek the canine picked the track back up. We tracked past a camouflage coat at that time. I

reported that to my backup officer, Officer Lorenzo. And I continued with the track until the canine lost the track again. From that point I attempted to locate- have the canine attempt to relocate the track, but he was never successful * * *.

(*Id.*).

{¶37} Officer Brad Pleiman, with the Shelby County Sheriff's Office, testified that he responded to a call on November 5, 2008 to assist the Sidney Police Department at Arrowhead Apartments. (Jury Trial Vol. II Tr. at 306-307). Office Pleiman also attempted to use a canine to track the suspect from the wood line to where the crime occurred. (*Id.* at 308). Officer Pleiman testified that his canine was unable to pick up the track, so he joined Officer Robbins in the woods to try to pick up the track where he left off. (*Id.*). In the process, Officer Pleiman discovered a stocking cap in the woods. (*Id.*).

{¶38} Officer David Godwin, from the Sidney Police Department, testified that Frazier lived in his neighborhood. (*Id.* at 313). Officer Godwin testified that he had observed Frazier walking through the neighborhood as often as two or three times a day. (*Id.* at 315). Officer Godwin testified that he had observed Frazier wearing a camouflage jacket and stocking hat identical to those that were admitted as an exhibit. (*Id.* at 313-314).

{¶39} Tamara Frazier, Frazier's wife, testified that the stocking hat and camouflage coat belonged to Frazier. (*Id*. at 318). On cross examination, Tamara admitted that she had worked third shift and came home around 7:15 a.m. on November 5, 2008. (*Id*. at 319). Tamara acknowledged that she had not observed what Frazier was wearing that morning. (*Id*.).

{¶40} Donald Garret testified that Frazier was his cellmate during May 2010. (*Id*. at 337). Garrett testified, "[Frazier] admitted that he broke into Lieutenant Tangeman's house. And that his wife could not identify him. The people they said- the witnesses couldn't identify him. So he could beat the case." (*Id*. at 338).

{¶41} The parties entered a joint stipulation agreeing to the truth and accuracy of a DNA report from the Miami Valley Regional Crime Laboratory and that the report "indicates the presence of the Defendant's DNA on the green camouflage jacket and the grey hooded sweatshirt." (Joint Ex. 1). The parties also stipulated that "[t]he DNA analysis of both the camouflage jacket and grey sweatshirt show a mixture of DNA from a contributor other than the Defendant and that the contributor is unknown as no other individual's DNA was tested by the crime laboratory." (*Id*.).

{¶42} After reviewing the relevant evidence, we cannot find that there is insufficient evidence to support the jury's verdict or that Frazier's conviction is

against the manifest weight of the evidence. Smith and Sawyer observed a man in a camouflage jacket and stocking hat walk around from behind that Tangemans' house between 8:30 and 9:00 a.m. on November 5, 2008, the same time that Daniela was driving her child to school. (Jury Trial Vol. I Tr. at 92, 147). The man began running after he had walked past Smith and Sawyer. (*Id*. at 145-146). Daniela also observed a man in a camouflage jacket and stocking hat running in the opposite direction as she drove back to her home from the school. (*Id*. at 91). When Daniela entered her home, she discovered that someone had been in the house and had stolen several items, mostly consisting of jewelry. (*Id*. at 96). Two police officers used canines to follow the track into the woods between the Tangemans' housing development and Arrowhead Apartments. (*Id*. at 245); (Jury Trial Vol. II Tr. at 307-308). The officers discovered a camouflage jacket and stocking hat in the woods. (Jury Trial Vol. I Tr. at 245); (Jury Trial Vol. II Tr. at 308). Another officer observed Frazier emerge from the woods near Arrowhead Apartments, claiming he had been jogging in the woods even though the woods did not have running trails and Frazier was not wearing typical exercise attire. (Jury Trial Vol. I Tr. at 205-208). Tamara, Frazier's wife, and Godwin, his neighbor, both testified that he owned a stocking hat and camouflage jacket identical to the ones recovered in the woods. (Jury Trial Vol. II Tr. at 313-314, 318). DNA evidence also linked Frazier to the camouflage jacket. (Joint Ex. 1).

Finally, Frazier told his cellmate he had broken into the Tangemans' home. (Jury Trial Vol. II Tr. at 338). We find that there is sufficient evidence, if believed, for the jury to find that Frazier committed the burglary of the Tangemans' home beyond a reasonable doubt. In light of this evidence, we cannot find that the jury clearly lost its way resulting in a manifest miscarriage of justice.

{¶43} Frazier's fourth and fifth assignments of error are, therefore, overruled.

### Assignment of Error No. II

**Mr. Frazier's trial attorney was ineffective for failing to demand that Tamara Frazier be advised that she could elect not to testify against her husband. Sixth and Fourteenth Amendments to the United States Constitution, Section 10 and 16, Article I of the Ohio Constitution. (Tr. 316-20; Feb. 11, 2011 Judgment Entry of Sentencing.)**

### Assignment of Error No. III

**The trial court committed plain error when it did not advise Mrs. Frazier that she was not required to testify against her husband. Crim.R. 52(B); Evid.R. 601(B). (Tr. 316-20; Feb. 11, 2011 Judgment Entry of Sentencing.)**

{¶44} In his second and third assignments of error, Frazier argues his trial attorney was ineffective for failing to demand that the trial court advise Tamara that she could elect not to testify against him. Frazier also argues that the trial court committed plain error when it did not advise Tamara that she was not required to testify against him.

{¶45} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶46} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976)

{¶47} Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 691. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

{¶48} Frazier did not object to Tamara's testimony at trial. Consequently, Frazier has waived all but plain error. *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990). We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58 (1990).

{¶49} Evid. R. 601(B)(2) provides that "[e]very person is competent to be a witness except * * * [a] spouse testifying against the other spouse charged with a crime except when * * * [t]he testifying spouse elects to testify." The Supreme Court of Ohio has held that pursuant to this rule, a testifying spouse "remains incompetent * * * until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial court must take an active role in determining competency, and must make an affirmative determination on the record that the

spouse has elected to testify." *State v. Adamson*, 72 Ohio St.3d 431 (1995), syllabus.

{¶50} In the present case, the State inquired whether Tamara was "here voluntarily," and she replied that she was. (Jury Trial Vol. II Tr. at 318). However, the trial court did not make an affirmative determination on the record that Tamara was aware of her right to refuse to testify and that she had elected to testify against her spouse.

{¶51} Although Frazier's trial counsel did not demand that the trial court make the required determination on the record and the trial court failed to make the determination of its own accord, we cannot find that this error constituted ineffective assistance of counsel or rises to the level of plain error. Tamara's testimony was brief, limited primarily to identifying the stocking hat and camouflage jacket as belonging to Frazier. (*Id*.). This testimony duplicated the DNA evidence linking the jacket to Frazier, as well as his neighbor's testimony that he had observed Frazier wearing an identical camouflage jacket and stocking hat. (Jury Trial Vol. II Tr. at 313-314). In light of the weight of the remaining evidence, such as Frazier's admission to his cellmate that he had committed the burglary, we cannot find a reasonable probability that the outcome of the proceeding would have been different had the trial court declared Tamara

incompetent. Consequently, we do not find that Frazier's trial counsel was incompetent or that the error rises to the level of plain error.

**{¶52}** Frazier's second and third assignment of error are, therefore, overruled.

### Assignment of Error No. VI

**Mr. Frazier's trial attorney was ineffective because he did not challenge the unduly suggestive identifications made by Sawyer and Smith. Sixth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution. (Feb. 11, 2011 Judgment Entry of Sentencing.)**

**{¶53}** In his sixth assignment of error, Frazier argues Sawyer and Smith's identifications were the result of an unduly suggestive show up when law enforcement asked them to identify him while he was seated in the back of a police cruiser shortly after the incident. Frazier contends that his trial counsel was ineffective because he did not challenge Sawyer and Smith's identifications.

**{¶54}** The Supreme Court of the United States has stated that suggestive identifications are problematic because they increase the likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375 (1972). However, the admission of evidence of a show-up, without more, does not violate due process. *Id.* This Court must, therefore, determine whether the identification was reliable based on the totality of the circumstances. *Id.* at 199. The factors the Court must consider when determining the likelihood of misidentification include

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200. A trial court will only suppress a pretrial identification if it is unnecessarily suggestive and unreliable given the totality of the circumstances. *State v. Manley*, 3d Dist. No. 1-11-04, 2011-Ohio-5082, ¶ 5, citing *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 38-39 (10th Dist.). This Court has previously stated that "[e]ven if the original identification procedure was suggestive, the actual identification is still admissible as long as it is reliable." *Manley*, citing *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977) and *State v. Moody*, 55 Ohio St.2d 64 (1978).

{¶55} In the present case, Smith and Sawyers each testified that they had a brief encounter with the man near the Tangemans' house as he walked by them. (Jury Trial Vol. I Tr. at 154, 193). The witnesses testified that they observed him at close range and exchanged pleasantries, but that he was wearing a hat, a hood, and had his head down. (*Id*. at 145-146, 187-188). Both women described the man's clothing in great detail and testified that he was at least five feet six inches tall. (*Id*. at 170). Smith and Sawyers each testified that they were originally unable to identify Frazier as the man they had observed because he was seated in

the back of a police cruiser and not wearing the camouflage jacket and stocking cap. (*Id.* at 152, 190). The women each testified that Frazier was wearing dark jeans like the man they had observed near the Tangemans' house, but they were unable to see whether he was wearing white gym shoes because he was seated in the vehicle. (*Id.*). Once the women observed Frazier standing, they testified they were certain that he was the man they saw near the Tangemans' house. (*Id.* at 152-154, 191).

{¶56} After reviewing Smith and Sawyers' testimony, we cannot find that Frazier's trial counsel was ineffective for failing to file a motion to suppress the identifications as unduly suggestive. As an initial matter, we note that Frazier's trial counsel cross-examined Smith and Sawyer at length regarding the reliability of their identifications of Frazier. (*Id.* at 144-199). The women testified that they observed the man near the Tangemans' house at a very close range, provided consistent, detailed descriptions to law enforcement, observed Frazier in the police cruiser shortly after the incident, and were confident they had made the correct identification. (*Id.*). Frazier argues that the fact that the women were initially unsure he was the man they had observed near the house demonstrates that their identifications are unreliable and the result of law enforcement presenting Frazier to them in the police cruiser and again with a photograph. However, the fact that the women were reluctant to make a misidentification and did not identify Frazier

until they observed him standing, which was how they observed the man near the Tangemans' house, supports their credibility.

**{¶57}** Even assuming for the sake of argument that the identification was unduly suggestive and unreliable, we cannot find a reasonable probability that the outcome would be different. Absent the identifications by Sawyers and Smith, DNA evidence linked Frazier to the camouflage jacket discovered in the woods between the Tangemans' house and Arrowhead Apartments. (Joint Ex. 1). Additionally, Frazier's neighbor had observed Frazier wearing a camouflage jacket and stocking hat like the hat found in the woods and observed on the man in the development by Daniela, Sawyers, and Smith. (Jury Trial Vol. II at 313-314). Law enforcement observed Frazier walk out of the woods near Arrowhead Apartments shortly after the incident, claiming he had been "jogging for his cholesterol," even though the woods did not contain any trails. (Jury Trial Vol. I at 205-208). Furthermore, Frazier admitted to his cellmate that he had committed the crime. (Jury Trial Vol. II at 338). In light of the weight of the evidence, we cannot find that Frazier suffered prejudice even if his trial counsel erred by failing to challenge the identifications. As a result, we cannot find that Frazier's trial counsel was ineffective.

**{¶58}** Frazier's sixth assignment of error is, therefore, overruled.

{¶59} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court in trial court case number 08CR306 (appellate case number 17-11-06). Having failed to raise any assignments of error related to trial court case number 10CR125 (appellate case number 17-11-07), we dismiss the appeal for want of prosecution.

*Judgment Affirmed in Case No. 17-11-06*

*Appeal Dismissed in Case No. 17-11-07*

**SHAW and ROGERS, J.J., concur.**

**/jlr**