[Cite as *State v. Delmont*, 2017-Ohio-8946.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2017-T-0004** |
| - vs - | : | |
| ANTHONY MICHAEL DELMONT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2015 CR 00827.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Edward F. Borkowski, Jr.*, P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1}  Appellant, Anthony Michael Delmont, entered pleas of guilty to one count of Attempted Burglary and one count of Burglary, felonies of the third degree.  Appellant now appeals from the December 13, 2016 judgment of sentence entered by the Trumbull County Court of Common Pleas.  At issue is whether the trial court erred when it imposed two 12-month concurrent sentences.  The trial court's judgment is affirmed.

{¶2} On July 13, 2015, Charles Gardner and his wife were awoken when they heard appellant, whom they did not know, kicking and banging in an attempt to open a sliding glass door to their home. Mr. Gardner got into a verbal altercation with appellant and chased appellant until he ran out of sight. Mr. Gardner then observed that his motor home, located next to the garage, had been forced open and ransacked. The inside of the motor home was damaged. Mr. Gardner reported thousands of dollars in damages to his insurance company, for which he paid a $500.00 deductible. Police were able to recover blood samples from various items in the motor home. DNA analysis revealed the blood was from appellant.

{¶3} On November 10, 2015, appellant was indicted on four counts: Count 1, Attempted Burglary (F3), in violation of R.C. 2923.02 and R.C. 2911.12(A)(1)&(D); Count 2, Burglary (F3), in violation of R.C. 2911.12(A)(3)&(D); Count 3, Breaking & Entering (F5), in violation of R.C. 2911.13(A)&(C); and Count 4, Vandalism (F4), in violation of R.C. 2909.05(A)&(E).

{¶4} In December 2015, appellant entered a residential drug treatment facility, known as Lia House, in Cleveland. He was given a bed at the facility and eventually transitioned into independent sober living. Appellant worked with a counselor, attended seven meetings per week, and participated in various classes and programming. He also maintained employment.

{¶5} On August 22, 2016, appellant pled guilty to Count 1 and Count 2 (as stated above, but referred to as an "amended indictment"). Appellee, the state of Ohio, dismissed Count 3 and Count 4. The trial court ordered a presentence investigation report ("PSI").

{¶6} A sentencing hearing was held on December 12, 2016. The trial court sentenced appellant to 12 months in prison on each count, to be served concurrently, for a total 12-month term of imprisonment. The court also ordered appellant to pay restitution in the amount of $500.00.

{¶7} Appellant raises one assignment of error for our review:

{¶8} "The sentence imposed by the trial court is contrary to law as a result of the court's failure to properly consider and weight [sic] the purposes and principles of felony sentencing (R.C. 2929.11) and the factors relating to the seriousness of the offense and recidivism (R.C. 2929.12)."

{¶9} Felony sentences are governed primarily by R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶1, citing R.C. 2953.08(G)(2). A felony sentence is not contrary to law when it is within the statutory range and the trial court has complied with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12. *State v. Tate*, 11th Dist. Lake No. 2015-L-038, 2016-Ohio-8421, ¶17 (citation omitted). *State v. Withrow,* 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, ¶21 (citation omitted).

{¶10} Appellant concedes his sentence is within the applicable statutory range. He challenges the trial court's consideration of the statutory seriousness and recidivism factors.

3

{¶11} To ensure the sentence complies with the overriding principles of felony sentencing as stated in R.C. 2929.11, a court imposing a felony sentence is required to consider the seriousness and recidivism factors found in R.C. 2929.12. The trial court, however, "is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)'" *State v. Webb*, 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000); *see also State v. O'Neil*, 11th Dist. Portage No. 2010-P-0041, 2011-Ohio-2202, ¶34. Further, the "trial court is not required to give any particular weight or emphasis to a given set of circumstances" when considering the statutory factors. *State v. DelManzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23.

{¶12} Jackie Rivera, the executive director and chemical dependency counselor of Lia House spoke on appellant's behalf at sentencing. She stated appellant was successful in the program, still attended meetings, and is a "very good example of how the program at the Lia House is supposed to work." Ms. Rivera told the court appellant was welcome to stay in the program for as long as he needed.

{¶13} Defense counsel informed the court that appellant had been clean and sober for two and one-half years before he relapsed and committed the instant offenses. It requested the trial court impose community control so appellant could continue to reside at Lia House and receive drug treatment. Appellant stated he could not "apologize enough for the fear upon [the victims] in an incident I don't remember because I was so under the influence. The only good was the chance to go to Cleveland to reestablish a foundation recovering to be at the Lia House[.]"

4

{¶14} The trial court considered appellant's criminal history, as outlined in the PSI. The court specifically noted a 2011 burglary charge: defense counsel indicated it had involved appellant's mother, and the PSI indicates the charge was subsequently dismissed.

{¶15} The PSI also reveals that appellant was charged with two receiving stolen property charges in 2011, which were dismissed, but that he was convicted of possessing drug abuse instruments, for which he was sentenced to 77 days in jail. Appellant was also convicted of petty theft in 2012 and sentenced to 30 days in jail, which were suspended; six months probation; and ordered to complete a residential drug treatment program. Appellant does not have a juvenile record, and the instant offenses appear to be appellant's first felony convictions. The PSI additionally references appellant's military history: he served in the United States Marine Corps from 1994 to 1999, earning an honorable discharge.

{¶16} The trial court then stated the following on the record:

> Here's the one thing I want to say about people who either get drunk or involved in drugs and I know that's a problem. But when you violate somebody's property and their home, whether you were as sober as, the old saying is a judge, or whether you were under the influence, that motor home didn't get any less broken when you were slamming on the door and scared the life out of them for which they still feel and they have gotten health problems as a result of it. And their motor home, according to them, is still not fixed the same and they're in retirement, you being under the influence of drugs * * * that doesn't change what you did. * * *
>
> And when it comes to violating somebody's home, the first and most important thing I look at is the victims, not the Defendants. The fact that you were clean for awhile before you committed an offense of violence and clean again now, doesn't erase what you did to those people.

5

{¶17} Finally, before imposing sentence, the trial court stated: "I think I have already indicated the reasons why I think that prison is consistent with the principles and purposes of sentencing in this matter but I will say that given what you have done during the time between committing this crime and now, that it will have and it has had enough of an impact in terms of the amount of time that you're going to do."

{¶18} Additionally, in its entry on sentence, the trial court noted that the "Court has considered the record, oral statements, pre-sentence investigation report, and any victim impact statement, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11, and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12." "This suggests the trial court did, in fact, consider the requisite statutory factors." *State v. Goodnight*, 11th Dist. Lake No. 2008-L-029, 2009-Ohio-2951, ¶17, citing *State v. Kearns*, 11th Dist. Lake No. 2007-L-047, 2007-Ohio-7117, ¶10.

{¶19} Appellant has failed to demonstrate that the trial court did not properly consider and weigh the statutory purposes and principles of felony sentencing or the statutory seriousness and recidivism factors. Appellant received a sentence far less than the possible maximum term of imprisonment, to wit: 36 months on each count.

{¶20} Appellant further contends the trial court erred by sentencing him to prison rather than imposing community control, as was recommended by the prosecutor, without providing an explanation. It is not clear, however, that the prosecutor actually recommended community control. The prosecutor stated it concurred with the recommendation of the Adult Probation Department. That recommendation, which is included in the PSI, is internally inconsistent. First, it offers an opinion that appellant is

6

not amenable to any available community control sanctions; it then recommends that appellant be granted basic probation supervision with certain enumerated community control sanctions. It is, therefore, not clear what the prosecutor intended as its sentencing recommendation. Further, the trial court did provide an explanation as to why it decided to impose a prison sentence, namely because of the significant harm to the victims and their property. This argument is not well taken.

{¶21} Appellant has not demonstrated, by clear and convincing evidence, that the record does not support the trial court's findings under the relevant statutes or that the sentence is otherwise contrary to law.

{¶22} Appellant's sole assignment of error is without merit.

{¶23} The judgment of the Trumbull County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

————————————

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶24} The majority affirms Mr. Delmont's two concurrent 12-month sentences. I would reverse and remand, with instructions that he be sentenced in accordance with the recommendation of the Trumbull County Adult Probation Department, which recommendation was adopted by the state: basic parole supervision, with community control sanctions. If parole supervision and community control sanctions are not to be

used in a case such as this, absent any other sentencing factors, then the mandates are a nullity.

{¶25} Mr. Delmont pleaded guilty to two third degree felonies, attempted burglary, and burglary. These were his first felony convictions. Previously he had only been convicted of two misdemeanors: possessing drug abuse instruments, in 2011; and petty theft, in 2012. Pursuant to R.C. 2929.13(C), there was no presumption of prison in this case. Rather, the trial court was required to apply R.C. 2929.11 and 2929.12. I think the record clearly and convincingly shows the trial court erred in their application.

{¶26} In order for our sentencing scheme to be rational, it must be transparent and readily discernible as to why the court levied the sentence that was imposed. When the trial court does not support the severity or duration of the sentence with readily identifiable facts contained in the record it taints the public's perception of the courts and the public's trust that courts are rational. The recitation of magic words and findings contained in the required statutes is not supported by the record in this case. Injury to victim of crimes is a serious concern. But punishment of the offender is only one component of a multi-faceted sentencing determination. A reasonable person – or reasonable taxpayer – who bears the expense of the sentence imposed, cannot be forced to guess what is in the trial court's mind or heart when sentencing a defendant. The public must be able to discern from the record in a transparent, real-time, evidence-based manner the reasons for which a particular sentence is imposed on a particular defendant. If the public cannot do this, then the public's trust in the justice system will be diminished.

{¶27} Regarding the seriousness and recidivism factors, they certainly apply on each side of the ledger in this case. R.C. 2929.12(B)(2) directs that a crime is more serious when the victim suffers serious physical, psychological or economic harm. Here the victims, a retired couple, suffered serious psychological and economic harm. Mr. Gardner had to chase Mr. Delmont away with a gun when the latter attempted to break into the Gardner's home at night. This attempted invasion of the Gardner's privacy would obviously leave emotional scars. Further, Mr. Delmont did serious damage to the Gardner's expensive RV. The trial court acknowledged this serious psychological and economic harm on the record at sentencing.

{¶28} None of the other eight R.C. 2929.12(B) factors indicating a crime is more serious is present in the record.

{¶29} R.C. 2929.12(C) sets forth the factors indicating a crime is less serious. R.C. 2929.12(C)(4) provides that a sentencing court must consider any "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." Mr. Delmont committed these crimes while in a mental haze induced by his drug addiction. The Supreme Court of Ohio has held that drug addiction should be accorded "some" weight in mitigation. *State v. Tibbetts*, 92 Ohio St.3d 146, 174 (2001).

{¶30} None of the other R.C. 2929.12(C) factors are present in the record.

{¶31} R.C. 2929.12(D) sets forth factors indicating a likelihood of recidivism. Most hold in Mr. Delmont's favor. R.C. 2929.12(D)(1) fundamentally provides that a defendant should be considered likely to commit future crimes if the crime for which he or she is being sentenced was committed while on release before trial or sentencing in

9

another case, or while on post-release control, or had been previously terminated from post-release control, or had absconded from a community placement. Mr. Delmont does not fit into any of the relevant categories.

{¶32} R.C. 2929.12(D)(2) provides that recidivism should be considered more likely if the defendant had a juvenile record, or a history of criminal convictions. Mr. Delmont has no juvenile record, and only two prior convictions for misdemeanors.

{¶33} R.C. 2929.12(D)(3) provides that recidivism should be considered more likely if the defendant has not responded satisfactorily to prior punishments. Nothing in the record shows that Mr. Delmont did not respond satisfactorily to his prior misdemeanor punishments.

{¶34} R.C. 2929.12(D)(4) provides that recidivism should be considered more likely if the defendant has a history of drug or alcohol abuse that was related to the crime, and the defendant refuses to acknowledge that, or has refused treatment. This is the most significant factor revealed by the record in this case. Mr. Delmont is a heroin addict. He had previously completed two recovery programs, before relapsing into the clutches of this terrible disease. He had been sober for more than two years before committing these crimes. December 22, 2015, several months after committing these crimes, he voluntarily committed himself to Lia House, a residential recovery program in Cleveland, Ohio. As the majority acknowledges, his counselor, Jackie Rivera, testified on his behalf at sentencing, and fundamentally stated he was a model for what the program hopes to achieve. It should be noted that he continued, at the time of sentencing, to reside at one of Lia House's facilities, and had full-time employment.

{¶35} R.C. 2929.12(E) sets forth the factors indicating that recidivism is less likely. R.C. 2929.12(E)(5) indicates that a defendant's "genuine remorse" must be considered. In a letter to the trial court, and at sentencing, Mr. Delmont expressed his remorse movingly.

{¶36} R.C. 2929.11(A) provides:

{¶37} "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. *The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.*" (Emphasis added.)

{¶38} I respectfully fail to see how these sentences achieve the overriding purposes of felony sentencing. Mr. Delmont will certainly be incapacitated for a year. That is certainly achieved, and it is almost guaranteed he will relapse when released.

{¶39} However, I find it likely he will not be deterred from future crime, but encouraged. He was making a good recovery from his disease; he was employed full-time. Now he has not merely two felony convictions on his record, but prison time. He will not be attending the Lia House, which was helping him so well in his struggle with heroin. It would not be surprising if he has difficulty gaining useful employment on release, and relapses into addiction on his release. The sentences imposed, in my

opinion, are contrary to the medical and treatment evidence in this case based upon the appellant's obvious addiction.

**{¶40}** Other drug addicts will not be deterred from committing crime.

**{¶41}** Again, Mr. Delmont was being rehabilitated through his participation in the Lia House program. He cannot attend for a year.

**{¶42}** It can be argued, in light of the opioid crises and what medical science has long shown, that the way to prevent recidivism is to treat the addiction. It is not rational to argue that taking the defendant out of treatment and placing him in prison will prevent recidivism—unless we choose to incarcerate him for the rest of his life. Delaying his treatment will almost guarantee recidivism upon his release. This is wholly inconsistent with the principles and purposes of sentencing under R.C. 2929.11 and 2929.12.

**{¶43}** Incarceration is far more expensive than the appropriate use of community control sanctions. Figures quoted in Mr. Delmont's brief on appeal, from the Ohio Legislative Services Committee, indicate that it cost almost $25,000 per year in 2016 to house an inmate. R.C. 2929.11(A) specifically demands that sentences be fashioned so as to impose the least burden on government resources. Mr. Delmont's sentences do not. Rather they place an undue burden on the public's funds and resources.

**{¶44}** For all of these reasons, I find the record clearly and convincingly does not support the trial court's findings or sentences, and the matter should be reversed. R.C. 2953.08(G)(2).

**{¶45}** I respectfully dissent.